(No. 10931.—Reversed and remanded.)
C. F. WIEHE *et al.* Appellees, *vs.* HENRY PEIN *et al.*
Appellants.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. HIGHWAYS—*location of property and its surroundings must be considered in determining intention to dedicate it to public use.* In determining whether property has been dedicated to public use for a street the location of the property and its surroundings must be considered together with the acts and declarations of the owner, the intention to dedicate being more readily presumed in regard to urban than to country property and in regard to well settled country than in regard to wild or sparsely settled land.

2. SAME—*building fences on street lines extended is evidence of a dedication.* Fencing out of strips of land by the owner and leaving them in the direct lines of other streets or roads affords strong evidence of their being left for street purposes and in the absence of countervailing evidence might be accepted as satisfactory proof of their dedication.

3. SAME—*owner cannot repudiate a dedication once accepted.* Where the proper authorities have accepted a dedication of land for a street, neither the owner nor subsequent owners claiming under him can by subsequent acts repudiate the dedication and regain possession of the strip of land.

4. SAME—*when evidence that strips of land claimed as a street were taxed may be conclusive against dedication.* In a close case, where an easement over strips of land is claimed by a village by dedication, the taxing of the strips or the levying of special assessments thereon by the village might be persuasive, and even conclusive, that there was no accepted dedication, but it is of no consequence, in such case, that the township, county or State officers included said strips in their assessments and collected taxes on them, as the village could not be bound by their acts.

5. SAME—*burden is on owner of land claimed as street to show uninterrupted use by public was under license.* Where the proof shows uninterrupted use by the public of an alleged street or alley for the period necessary to establish a street or alley by prescription, the burden is on the owner of the land to show that such use was under some license inconsistent with the claim of right by the public.

6. SAME—*a village cannot sell its streets for a money consideration.* As a village and its officers hold the title to its streets in trust for the use of the public, they cannot barter or sell them for a money consideration and can only vacate them for some cause recognized by law.

APPEAL from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

F. J. GRIFFEN, for appellants.

J. E. CRAWFORD, (H. C. LUST, and MAYER, MEYER, AUSTRIAN & PLATT, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellees, C. F. Wiehe and the Edward Hines Lumber Company, on March 29, 1913, filed a bill in the circuit court of Cook county to restrain appellants, Henry Pein and Charles J. Wolf, village marshal and president of the board of trustees of the village of Melrose Park, from tearing up, damaging or interfering with a certain switch track crossing Twentieth and Twenty-first avenues extended, in said village, connecting the lumber yard of the Edward Hines Lumber Company with the Chicago and Northwestern railway, and from moving lumber or interfering with the business or property of appellees on their premises; that appellee Wiehe be declared to be the owner of the premises in question free from any interest or claim of said village, and that the Edward Hines Lumber Company, tenant of appellee Wiehe, be declared entitled to the peaceable possession of all of said premises free from any claim of said village. The village of Melrose Park, Arthur W. Bryant and Ellen S. Bryant were afterwards made parties defendant when the bill was amended. The contention between the Bryants and appellees was settled between the parties and no question of their interest arises on this appeal. The court granted a perpetual injunction against the village of Melrose Park and its said officers and found the title of the premises to be as set forth in the bill. The village and its officers have perfected their appeal to review that decree.

Main (or First) street in the village of Melrose Park runs east and west. Twentieth and Twenty-first avenues run north and south and intersect Main street and are paved

north of Main street, Twentieth avenue being east of
Twenty-first avenue. Main street is also paved, and at the
intersections of that street with Twentieth and Twenty-first
avenues the paved portions of said avenues, by turns off of
Main street, run down as far as or a little further than the
south line of Main street. C. F. Wiehe owns two tracts
of land south of Main street and occupied by the Hines
Lumber Company, described in the record as tracts H and I.
These tracts are about 130 feet wide north and south and
lie immediately between the south line of Main street and
the north line of the right of way of the Chicago and North-
western railway. Tract H, as contended by appellees, ex-
tends from the center line of Twentieth avenue extended,
westward to the center line of Twenty-first avenue extended;
and tract I extends from the center line of Twenty-first
avenue westward to the center line of block 123 extended.
Appellants claim perpetual easements in the public over the
said tracts of land for highways or streets, both by dedi-
cation and by right of prescription. The strips claimed as
streets or highways by appellants are each 66 feet in width,
and are extensions straight south of Twentieth and Twenty-
first avenues from the south line of Main street across the
property of appellees to the north line of the right of way
of said railroad company. Twentieth avenue thus extended
takes the east 33 feet of tract H, and Twenty-first avenue
thus extended takes the west 33 feet of said tract and the
east 33 feet of tract I. Appellees own the remainder of
said tracts, and that ownership is not questioned. The sole
question is whether or not the public has easements in said
66-foot strips for the purposes of public highways or streets.
It is also admitted by appellants that appellees own said
66-foot strips in question subject to said easements, except
the east 33 feet of the east strip, which appellants admit is
owned by H. F. Glos, subject to said easement.

It is unquestioned in this record that Arthur W. Bryant
formerly owned tract H, extending from the center of

Twentieth avenue extended, to the center of Twenty-first avenue extended. The White Lake Lumber Company, or Bryant Bros., began occupying the present lumber yard of the Hines Lumber Company on said tract in about 1892 or 1893 and occupied it continuously up to some time in 1911, when the Hines Lumber Company became the owner of the lumber yard by purchase and Wiehe the owner of said tract. At the time the lumber yard of the White Lake Lumber Company was opened up on said tract, being more than twenty years prior to the bringing of this suit, it was enclosed by a high board fence on the east, south and west. The fence on the east end of tract H was built on the west line of Twentieth avenue extended across said tract and the fence on the west end was built on the east line of Twenty-first avenue extended across said tract, thus leaving the east and the west 33 feet of said tract unfenced. Those fences have continued on said lines from the time they were built up to the bringing of this suit. Gates were constructed in the east and west ends of the fences for use in the hauling of lumber to and from the said lumber yard, and the lumber yard was reached by all persons entering it over the 66-foot strips now claimed by appellants to be highways or streets. The east 33 feet of the east strip in question has been for the same length of time left open for the use of the public by Glos, who owned the property east of it, and whose coal sheds or business property extended only to the east line of Twentieth avenue extended. On the north line of tract H and the south line of Main street the White Lake Lumber Company built two lumber sheds, a barn and an office at the same time it built the fences. One lumber shed extends westward of the barn to the east line of Twenty-first avenue extended. The barn is near the center of the north line. The office is on the northeast corner of said tract H and its east line is the west line of Twentieth avenue, and there is a walk built on the east end of the office extending into Twentieth avenue extended. The other

lumber shed is between the barn and the office. There are cement sidewalks north of tracts H and I, on the south line of Main street. These walks extend to the paved portions of Twentieth and Twenty-first avenues, where such pavement extends to the south line of Main street in the middle portions of Twentieth and Twenty-first avenues extended, but the walks do not cross the paved portions, which are there each 26 feet in width. There is no fence across any part of Twentieth and Twenty-first avenues extended across that tract of land, either at the north or south end thereof. The White Lake Lumber Company acquired tract I about four or five years after the lumber yard was started on tract H, and began using it for piling sand, stone and brick and for a lumber yard. There was no fence built on the east end of that tract or the west line of Twenty-first avenue, and none has been built there since its occupancy by the lumber company. There was a fence built on the north side of said tract, which is still there, that extends only from the west line of Twenty-first avenue westward along the north side of that tract.

The Northwestern Railroad Company has a team track for Melrose Park on the north side of its right of way extending from Nineteenth avenue westward to Twenty-fourth avenue. That team track is just south of the south line of the village of Melrose Park and just in the north side of the village of Maywood. The north line of the right of way of said railroad is very near, if not on, the south line of the village of Melrose Park. Appellants only claim a public easement in the south or stub ends of Twentieth and Twenty-first avenues extended from Main street to the south line of the village of Melrose Park. The switch track in question, when built, extended from the Northwestern railroad right of way at its junction with the east line of Twentieth avenue extended, northwesterly to near the center of said tract H on the east line of Twenty-first

avenue extended, and thence westerly across Twenty-first avenue and across tract I.

Twenty witnesses testified in the court below for appellants, seventeen of whom testified, in substance, that their residence was in Melrose Park or the village of Maywood and that they have been thoroughly acquainted with the situation and condition of the stub ends of Twentieth and Twenty-first avenues extended southward to the village line as long as they had lived in that vicinity, that time ranging from twelve or fifteen years prior to their testimony up to thirty or thirty-five years. Many of these witnesses were familiar with the situation and conditions from several years prior to the time tract H was first used as a lumber yard up to the time of their testimony. These seventeen witnesses testified, in substance, that the railroad company had been delivering freight on said team track for the citizens of the village of Melrose Park and vicinity, and on the north side thereof, from Nineteenth to Twenty-fourth avenues, as long as they had lived there or as long as their knowledge of the conditions there had existed; that said cars were unloaded all that time at the south ends of Twentieth and Twenty-first avenues extended, and that everybody, including teamsters, hauled freight to and from the cars at the south ends of said stub avenues that received or shipped freight from or on said railroad or who were employed to haul the same; that said freight was hauled over the stub ends of said avenues during all that time, and during all that time there was a distinct and well-beaten traveled way near the center of each of said avenues; that that traveled way has been on said strips on practically the same lines, and that the travel was continuous and uninterrupted up to the time of the trial except within the last three or four years, when the travel would be occasionally interrupted by the railroad company leaving cars on the switch track, or by the Hines Lumber Company piling sand or other material in or near the traveled way; that said trav-

eled way was and is now of the width of 20 or 25 feet, and that it has been traveled by any and everybody that desired to do so, including the teams of the said lumber companies and those of their customers.

Nine witnesses in all testified for appellees, about five or six of whom testified as to the condition of the avenues aforesaid on said stub ends since the organization of the first lumber yard. The testimony of very few of them, if any, amounts to a direct denial that the public had traveled said stub avenues in the manner testified to by appellants' witnesses. Their testimony laid stress upon the fact that there were no good crossings of the railroad tracks of said railway just south of these stub avenues, and that the railroad rails stood up from four to six inches above the surface of the earth, and that there was only a part of the time that planks were between the rails to facilitate crossing. Their testimony is also confined largely to the fact that the lumber companies have for years piled sand, brick, posts, lumber and other materials on the sides or parkways of said avenues. Some of these witnesses directly admitted that there were traveled ways through said stub avenues used by the lumber companies and by others for travel. Two of the witnesses testified that they had forbidden people to travel on said avenues. Horace Zoellin, who had been for twenty-five and one-half years manager of the said lumber yards, being employed by both companies, testified: "I stopped in there [in Twenty-first avenue] hundreds of teams." He gave no instance of his stopping said teams and did not state why he stopped them nor when he stopped them. Henry Knippenberg testified that for the last fifteen years he had seen quite a number of teams on what would be Twenty-first avenue if extended, but had not seen any for the last year and a half; that he saw teams of the Hines Lumber Company on there every day and saw on there teams belonging to others and told them to "beat it;" that before he commenced to order them off they went

in there "freely, without interruption;" that they wanted
to go to the Northwestern tracks, and that for the last year
and a half or two years he had told them that they could
not get across the railroad and that they had better turn
around and go back. In this connection he used this ex-
pression: "I just notified them that they could not drive
over there because the tracks were not in condition for it."
Most all of the witnesses for appellees were employees of
the Hines Lumber Company or of the railroad company
who were interested in the use of the switch track.

It was proved by the appellants by witness Richard J.
Bailey, a resident of Melrose Park since 1871 and marshal
of the village from 1894 to 1903, that in 1896 or 1898 the
stub ends of said avenues were graded from Main street to
the railroad track by a road grader, at the cost of the vil-
lage; that the graded portions of said streets were in the
center of said avenues and were each 24 feet wide, and that
the village continued to work or grade the avenues so long
as he was marshal. He is corroborated in that testimony
by a number of other witnesses for appellants and is con-
tradicted only by Horace Zoellin, who testified that those
avenues were never graded or worked, so far as he knew
or remembered. Bailey further testified that in 1900 he
gave notice to the White Lake Lumber Company, or Bryant
Bros., as marshal of said village, to remove obstructions
from Twentieth and Twenty-first avenues,—that is, to re-
move lumber and other materials therefrom; that one of
the Bryant brothers and Zoellin appeared at a meeting of
the board of trustees shortly after said notice and asked
permission from the board to use the parkways for the
piling of material, provided they kept open the roadway,
and said if allowed to do so they would move the obstruc-
tions from other parts of the avenues and not claim any
right to them. He is corroborated in this by the testimony
of Charles J. Wolf and one or more witnesses. His tes-
timony in this regard was contradicted by no one, although

Zoellin was on the witness stand four different times during the trial. Arthur W. Bryant testified that he never appeared before the board or any committee in reference to said avenues at the time mentioned by Bailey. The other Bryant did not testify, but some of the witnesses testified that their recollection was that Arthur was the brother who came before the board. Bryant did testify that he told Wiehe and the Hines Lumber Company, at the time they were negotiating for the purchase from Bryant of the lumber and lumber yard, that some six years before that time the village had ordered his company off of those avenues. His testimony in that particular corroborated Wolf and contradicted Wiehe in his claim that he had no knowledge of the village's claim to said stub avenues before he purchased the property of Bryant. The location of the fences of the lumber yards and the driveways on said stub avenues from Main street to the railroad right of way were constructive notice of the claim of the village or of the public. Wolf further testified that the village passed a resolution, just before Bryant was notified to remove his obstructions, demanding that he remove them, and that Bryant appeared before the village board and stated that he did not claim the avenues as private property, and that if permitted to keep material piled upon the parkways of said avenues he would remove it upon demand of the village.

The foregoing evidence shows clearly that the village of Melrose Park has an easement in said strips of land for street purposes. The placing of the fences by the White Lake Lumber Company on the east and the west parts of tract H on the lines of Twentieth and Twenty-first avenues extended, and the fence along the north line of tract I, and leaving the strips in the said avenues where the public had been traveling them for some years prior thereto, furnish strong evidence that the owners of said tract intended to dedicate the strips for street purposes. The subsequent acts of the owners of tracts H and I in connection with said

fencing, and their subsequent declarations, show conclusively that they intended to, and did, dedicate the parts of their tracts in the stub ends of said avenues as streets of the village. This court has held that in arriving at a conclusion as to whether an act done by a land owner was with intent to dedicate land to the public use the location of the property and all its surroundings must be considered, as well as the declarations of the land owner in connection with his acts tending to show a dedication and his declarations subsequent thereto. It has also been held that an intention to dedicate will be more readily presumed in regard to urban than to country property, and in regard to well settled or frequented country than in regard to wild, wood, waste or unfrequented land. It has also been repeatedly held that the fencing out of strips of land by the owner and leaving them in the direct lines of other streets or roads by putting fences on the street or road lines extended, affords strong evidence of their being left for street or road purposes, and in the absence of countervailing evidence might be accepted as satisfactory proof of their dedication. (*City of Chicago* v. *Hill,* 124 Ill. 646; *Moffett* v. *South Park Comrs.* 138 id. 620.) The evidence is clear that the village of Melrose Park accepted the dedication, graded and worked the avenues at its own expense, and that the public made use of the same for public travel continuously thereafter up to the bringing of this suit. The White Lake Lumber Company positively recognized the right of the city and the public to those stub avenues, and the Hines Lumber Company had both actual and constructive notice of the rights of the village and of the public before it purchased the lumber yard, as did also Wiehe. Where an owner of land makes a dedication, as at common law, of a strip thereof for a public highway or street and the proper authorities accept the same, neither he nor subsequent owners claiming under him can repudiate his acts and regain possession of such strip of land. *Moffett* v. *South Park Comrs. supra.*

The record discloses that tract I, including ·the ·west 33 feet of Twenty-first avenue extended, was taxed by the village of Melrose Park for general taxes from about 1896 to 1909 and also for the year 1913; that for the years from 1910 to 1913 tract H was similarly taxed by descriptions that included the east half of· Twenty-first avenue extended and the west half of Twentieth avenue extended. It also shows that the village levied special assessments for three public improvements: No. 35, for the Lake street sewer, in about 1897; No. 43, for water-works, in about 1899; No. 58, for curbing, grading and paving First (or Main) street, in about 1904; and No. 77, supplemental assessment on improvement in Lake street, in about 1909. All of said improvements were paid or to be paid in ten installments. Some of the tax receipts exhibited in evidence for the collection of those special assessments indicate that the stub ends of avenues 20 and 21 were specially assessed for all of said improvements. The descriptions in something like half or more of those receipts for special assessments do not include those avenues or any of said special assessments. The assessment roll of assessment No. 58 was introduced in evidence and shows clearly that that special assessment was not levied upon any part of those avenues. The other assessment rolls are not in evidence. The receipts, therefore, are not very reliable evidence that the village assessed those avenues for any of those special improvements. In a close case, where an easement is claimed by dedication in a public street by a village, the taxing of the strips or the levying of special. assessments thereon by the village might be persuasive, and even conclusive that there was no dedication and acceptance of the dedication. The tax receipts and other exhibits introduced in evidence are, however, of very little force in deciding the issues in this case, and, when considered all together, they lead to the conclusion that the tax collectors erroneously included the strips in question in the receipts for taxes and assessments, and par-

ticularly for the special assessments. It is of no consequence that the township, county and State officers included said strips in their assessments and collected taxes on them. The village could not be bound by their acts. The evidence of a dedication is overwhelming, and even if the owners of tracts H and I did pay some of the taxes and special assessments on the strips in question, such payments could not have the effect to defeat the rights of the village and the public in said strips. The use made of the parkways by the owners of said tracts was a use that could properly be made in connection with the right of the public to the highways and was permitted by the village, and such use could not be availed of by appellees to defeat the rights of the village. *Tacoma Safety Deposit Co.* v. *City of Chicago,* 247 Ill. 192.

The proof in this record also shows that the village of Melrose Park had an easement in said strips by right of prescription. Where the proof shows uninterrupted use by the public of an alleged street or alley for the period necessary to establish a street or alley by prescription, the burden is on the owner of the land to show that such use was under some license, indulgence or special contract inconsistent with the claim of right by the public. The evidence in this case showed such uninterrupted use of such stub avenues for more than twenty years prior to the bringing of this suit, and the evidence further shows that such use was made under a claim of right by the public, and that that claim was acquiesced in by the owner of the said strips. This was sufficient to show a right in the public to said strips by prescription. *Thorworth* v. *Scheets,* 269 Ill. 573.

The Hines Lumber Company's employees constructed a switch track across Twenty-first avenue at the point above indicated, in the night time, very shortly before this bill was filed. The village marshal, Pein, acting under orders of Wolf, as president of the village of Melrose Park, in company with a number of citizens of said village, tore up and

removed said switch track at the point where it obstructed the avenue, and thereupon this bill was filed by appellees. The village authorities had a right to remove the switch track as an unlawful obstruction of the avenue.

Pending this suit in the lower court the village enacted an ordinance, which was accepted by appellees, providing that the Hines Lumber Company, under certain conditions, might maintain and lay the switch track across Twenty-first avenue extended. The ordinance contained a special provision that the enactment and acceptance of it should not prejudice either of the parties in the decision of this suit. It further provided that if the court should finally determine that said avenues, or either of them, are public highways, and that the village authorities should decide that they are not required for the use of the public, that then the village should vacate and relinquish them to the lumber company for $2500. The ordinance was not an issue in this case, and the circuit court should not have nullified it by its decree for that reason. It is not to be understood from this decision, however, that this court is deciding that the village or its officers have any right whatever to barter or sell either one of said avenues, or both, for a money consideration. They can only vacate said avenues for some cause recognized by law or some reason sanctioned by the law. The village and its officers hold the title to its streets in trust for the use of the public. The law recognizes no right in them to barter or sell the same for a money consideration.

Appellants objected to certain fees charged by the master in chancery in this case as excessive. There was no objection to such fees made by appellees and they are satisfied that the amounts charged by the master in chancery are just and reasonable. As appellants will not be required to pay any of those fees in this case they are not further interested in the point made by them that such fees are un-

reasonable and excessive. The question will therefore not be further considered by this court.

For the reasons above indicated the decree of the circuit court is reversed and the cause is remanded, with directions to dismiss complainants' bill for want of equity at their cost.

*Reversed and remanded, with directions.*