(No. 19104.— )

ADAM KOCH *et al.* Appellants, *vs.* JAMES F. MRAZ *et al.* Appellees.

*Opinion filed February 20, 1929.*

CHARLES P. BARNES, for appellants.

VINCENT S. LUMLEY, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed a bill in the circuit court of McHenry county seeking to enjoin appellees from closing up a certain driveway which appellants in their bill alleged is a public highway. In order to understand the location of the driveway claimed as a private road, and the surrounding territory, it is necessary to set out the following plat.

The north and south driveway is shown by broken lines, the other driveways by dotted lines.

The double line running north and south through the center of the plat is the section line between section 18 on

the west and section 17 on the east. On the east side of this section line is what is known as the Pistakee Cottage Grounds. These grounds have been platted. The lands east of the section line were originally owned by John Stilling. It was timber land fronting on Pistakee bay, an arm of Fox lake. It was away from highways, except that the highway shown across the upper end of the plat extended to the section line at the northwest corner of the Stilling land. In 1885 Stilling began selling lots bordering on the bay. As the lots were sold off a provision was made by Stilling in the deeds giving a right of way over the balance of the Stilling land to the highway at the northwest corner. In 1891 Henry L. Hertz purchased the unsold and unplatted portion of the Stilling tract lying east of the section line. When Hertz purchased from Stilling the latter wished to designate on a plat a right of way over the land which he was selling to Hertz, for the benefit of the lots that had been sold, but the latter refused to have a plat of a right of way made but stated that he would buy with knowledge of the right of previous purchasers to have an exit, north, to the highway. Some years later Hertz and the cottagers agreed that for the benefit of all the lot owners in the Pistakee Cottage Grounds there should be a road along the east side of the section line, extending from lot 1 of such lands north to the northwest corner of the Stilling tract. This road was laid out by common consent of the lot owners, and it is not disputed that when laid out it was for the use and benefit of the owners as a private way.

Shortly after Stilling began selling lots, one Schumaker, who owned the land adjacent to and on the west side of the section line, platted and sold some lots along the lake shore to purchasers, who erected cottages thereon. When Schumaker sold lots he gave a right of way across his property, extending from the west boundary of lot 1 in the Pistakee Cottage Grounds southwest to the highway running north and south, known as the McHenry road. In 1908 or 1910

this land west of the section line, except so much as had been previously sold into lots, was purchased from Schumaker by George Sayer. In 1914 Sayer built a large stone pillar on either side of the driveway, at the intersection of this driveway with the McHenry public road. In 1905 the Pistakee Yacht Club purchased lot 1 in the Pistakee Cottage Grounds and built a large club house on the lake shore. That club is the present owner of lot 1. After Sayer purchased the Schumaker land he laid a concrete road on the driveway granted by Schumaker for the benefit of the lots along the lake shore sold by him. It is not disputed that that driveway as originally traveled from the pillars at its entrance on the north and south public highway, northeast to the section line which marks the west boundary of the club house lot, was a private driveway.

Appellants purchased lot 2 in the Pistakee Cottage Grounds, lying east of and adjacent to lot 1, known as the club house grounds. Appellants also later purchased the Schumaker farm of seventy acres lying west of the section line, and in 1927 platted the greater portion of that land lying north of the lots sold by Schumaker. McHenry is located southwest of these lands, and it is not disputed that traffic coming from that city and traveling to the various lots on the Pistakee Cottage Grounds frequently came over the driveway between the two stone pillars across the Schumaker land and passed through an opening in the fence on the west boundary of lot 1, and, turning north, passed over the north 100 feet of lot 1 and from there to the various lots in the Pistakee Cottage Grounds.

This lawsuit arises over the contention of appellants that the roadway extending northeasterly from the McHenry road to the opening in the fence on the section line, or the west boundary of lot 1, thence north across the rear of the various lots to the east and west highway as shown on the north side of the plat, became by user a public highway, and it is alleged in the bill that notwithstanding that

fact appellees in September, 1927, built a fence across the opening in the west boundary fence of lot 1, or club house grounds, and put a gate and fence across the north boundary of lot 1 so as to obstruct traffic over the driveways and northern end of lot 1. Appellees contend that these driveways were laid out as private ways and were for the use and benefit of the lots in that territory and not as public ways, and that there never has been an uninterrupted use of those roads by the public for a period of time sufficient to entitle the public to travel over them.

The character of the use of these roads and whether there has been an interruption in such use are the matters in dispute in this case. Numerous witnesses were heard on either side. It would serve no useful purpose and would unduly lengthen this opinion to set out the substance of the testimony of each witness. Many of those for appellants testified that they had passed over these driveways, going in at the southwest corner of the Schumaker land, between the stone pillars, thence northeast across the concrete strip put in by Sayer, through the fence forming the west boundary line of lot 1 in the Pistakee Cottage Grounds, over the north end of lot 1, and thence north or northeast, as their business carried them, without being stopped and without obstruction to their travel, for a period varying from twenty to thirty years. Some of these witnesses testified that they had seen on the pillars at the road at the southwest corner of the Schumaker land a board sign "Private road," with the names of certain lot owners on the board. Others testified they did not see such a sign, while some testified that they had seen it during the last few years. Most of appellants' witnesses testified that the occasion of their use of the road was business of various kinds which they had with the cottagers, or the Stilling Hotel at the northeast corner of the Stilling land, or visits to the lake shore in those grounds for pleasure. It does not appear that there were any public grounds in the Pistakee Cottage Grounds. On the other

hand, witnesses for appellees testified that as early as 1895 a gate was located at the southwest corner of the Schumaker place, and a gate was also put at the opening in the fence line on the west boundary of lot 1; that these gates were part of the time open and part of the time closed; that the gate was put in the west line of lot 1 to permit vehicular travel of the cottagers who wished to go to McHenry, and that posts were also put in that fence line for individuals to walk through, on the west line of lot 1, without opening the gate; that this gate and passage were put there also for the use of the owners of lots which had been sold in the Schumacher tract, on the west side of the section line; that in turn the lot owners on the west side of the section line, and Schumacher, and later Sayer, permitted the lot owners in the Pistakee Cottage Grounds to go through on their way to McHenry.

Most of appellants' witnesses testified that their purpose of using these roads was to either deliver ice, milk, groceries, mail or passengers to the lots and cottages in the Pistakee Cottage Grounds or to the Stilling Hotel, which was located at the northeast corner of these grounds, or that they made these trips for the purpose of building or other work on the various lots. Some of these witnesses testified that at times the gate at the stone pillars was closed, while others testified that they always found the gate open and at no time found any obstruction to travel. Some testified that the gates, when put there, had been knocked down, and that a fence which had been put across the driveway at the club grounds in 1916 or 1917 was there but a day or two, when it was taken down, and that this was the last time the opening in the west line of the club house lot was closed prior to September, 1927. Witnesses for appellees testified that gates were in the road at the north end of the driveway, at the northwest corner of the Stilling tract; that before it was built up the unused portion of that tract was used as a cow pasture and the gate at

the northwest corner of the grounds was kept closed; that later, after the driveway had been put in from the highway south over the lots along the east side of the section line, the various lot owners fenced the backs of their lots along the east side of the driveway. It appears that a fence has stood for many years on the north and south section line.

It is evident from the testimony that prior to the laying out of the north and south driveway the Pistakee Cottage Grounds were open, with no well-defined driveways, but persons desiring to drive to the lots along the lake drove from the northwest corner of the grounds in any direction they chose. Appellees' witnesses state positively that interruptions to the use of traffic by means of gates or fences were placed in these driveways at different times from 1891 up to the time of the filing of the suit. There is positive testimony in the record that earlier than 1904 there was a gate maintained at the southwest corner of what was known as the Schumaker land and one at the northwest corner of the Stilling tract, as well as a gate in the west line fence of lot 1, known as the club house grounds. There is evidence that again in 1909 the driveway leading from the southwest corner of the Schumaker land to the west line of the club house grounds had as many as three gates in it, which had to be opened in traveling the driveway, and that lot owner Wilke, and others on the south side of that driveway, objected to travel over that driveway; that thirty years before the date of the trial there was a gate located in the line fence on the west line of the club house grounds, about 100 feet south of the north line, and that it remained there until about 1908 or 1910, when it was opened, and that in 1915 or 1916, after the concrete road was laid on the east and west road, it was again closed. The evidence also shows that the roadway in the Pistakee Cottage Grounds extending north from lot 1 to the highway was graveled by lot owners in 1915 or 1916. To justify the reversal of the decree of the chancellor it must be shown to be against the

weight of the evidence. (*Cook* v. *Wolf*, 296 Ill. 27.) The fact that numerous witnesses testified that they at different times and at frequent intervals drove across the driveways to go into and out of the Pistakee Cottage Grounds does not necessarily overcome the weight of the testimony of those who tell of gates in the fences, and the refusal of lot owners in the Schumaker tract who were interested in the private right of way to permit travel through.

The statute in this State is that all roads in the State which have been laid out pursuant to the laws of the State or which have been established by dedication or used by the public as highways for fifteen years, and which have not been vacated in pursuance of law, are declared to be public highways. (Smith's Stat. 1927, chap. 121, par. 152.) There are three ways in which to establish public highways: by prescription, by dedication or by statute. It is not claimed that there has been a dedication of these driveways to the use of the public nor is it contended that they are statutory roads, but the claim is that there has been an uninterrupted user for fifteen years, which entitles the public to travel over them as public highways by prescription. The use and enjoyment of a roadway by the public for the time required by the statute creates the presumption of a grant or of a way by prescription, in the absence of proof that the use by the public was permissive rather than adverse. Where a road is shown to have been openly and notoriously used as an open public highway in common by the public for the statutory period it will be considered a public highway. The test whether a strip of ground has become a public highway by user is not the number of persons actually using it but the character of the use,—that is, whether the public generally had free and unrestricted right to use the road. Where a road has been shown to have been openly and notoriously used as an open and public highway in common by the public continuously without interruption for the statutory period it will be considered a

public highway. (*Mudge* v. *Wagoner*, 320 Ill. 357; *Lee* v. *Dickman*, 316 id. 529; *Phillips* v. *Leininger*, 280 id. 132.) The question to be determined in this review is whether the evidence shows that there was for a period of fifteen consecutive years uninterrupted use of these driveways in common by the public.

Where land is originally laid out and used as a private way for the use of land owners, its use by the public as well does not necessarily make it a highway, where the owner keeps it up and the public use is not clearly hostile or under claim of right. In order to establish a prescriptive right in the public where it is claimed that such property constitutes a part of a public highway, it must be shown that a well-defined line of travel existed over the property for a period of fifteen years. The use must be adverse, under claim of right, continuous and uninterrupted, with the knowledge of the owner of the estate and yet without his consent. (*City of Chicago* v. *Galt*, 224 Ill. 421; *Falter* v. *Packard*, 219 id. 356; *O'Connell* v. *Chicago Terminal Railroad Co.* 184 id. 308; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 id. 561; *Town of Brushy Mound* v. *McClintock*, 150 id. 129.) The use of one who finds a way open before him and uses it because it seems to be intended for such use does not of itself show that this use is exercised as a matter of right or adverse to the rights of the true owner, and such use will not establish a prescriptive right, no matter how frequent or how long continued. *Sprow* v. *Boston and A. Railroad Co.* 163 Mass. 330.

Pistakee bay is an arm of Fox lake. The territory here involved lies at some distance from the traveled highways and was unused, except for pasture, before it was laid out for summer homes. It was and is a wooded place, especially attractive to those who desire a summer home on the water's edge. Accordingly these lots were laid out and sold to different owners, with the right of ingress and egress over the

unsold portions of that territory. The travel in and out of those grounds has been either for the purpose of serving the cottages or the hotel or for the pleasure of looking about the grounds. The driveways through this territory are and have been but little used by the public to travel from one locality to another, as highways are generally used. The traffic has had to do almost entirely with the particular use to which the lots have been put. A road laid out and kept up by the owners of the grounds over which it lies will not become a public highway merely because for a period of fifteen or more years there was not continuous or frequent objection to its use in going to and from the lots in that territory. To so hold would be to render the ownership of private drives precarious, indeed. The fact that strangers may have driven in to view the grounds is not evidence that such use was under adverse claim of right in the public so to do.

The obstructions complained of prevent traffic across the north 100 feet of the club house grounds. The evidence shows that the entire north 100 feet of that lot was graveled for the purpose of affording a parking place for automobiles of club members, but there is no evidence of a grant of right of travel over this part of that lot, and the evidence does not show an adverse, continuous and uninterrupted travel over it by the public for the statutory period.

We are of the opinion that appellants did not show an adverse, continuous and uninterrupted use by the public, under claim of right, of these driveways for any one period of fifteen years, and the chancellor therefore did not err in dismissing the bill. The decree will therefore be affirmed.

*Decree affirmed.*