(No. 24781.—

FLORENCE STENGL, Appellee, *vs.* STARR BROTHERS,
Appellant.

*Opinion filed December 15, 1938.*

JESSE PEEBLES, and E. R. PHELPS, for appellant.

TRUMAN A. SNELL, and MICHAEL F. SEYFRIT, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

Florence Stengl filed her complaint in the circuit court of Macoupin county to recover damages for the past use of a twelve-foot strip of land of which she claimed ownership, and for an injunction restraining Starr Brothers from using the land or interfering with her right and title thereto. The parties stipulated that Mrs. Stengl is the owner of the fee in the strip but Starr Brothers claim that the strip had become a public alley by prescription. The chancellor granted an injunction but denied recovery of damages for past use of the land, and a direct appeal to this court followed. A freehold is involved where, as here, the issue is whether there is a highway over the land in controversy. *Phillips* v. *Leininger,* 280 Ill. 132; *Roloson* v. *Barnett,* 243 id. 130.

Prior to 1919, James Owens owned two pieces of real estate in Carlinville—one on either side of a twelve-foot alley which extended east and west in the block. In 1919, Owens conveyed to Starr Brothers all that parcel of real estate lying south of the alley except a twelve-foot strip ninety-two and one-half feet long which was adjacent to and ran parallel with the alley. Thus, after the transfer, Owens owned a lot on the north side of the alley and the strip twelve feet wide opposite this property on the south side of the alley. During the years immediately following the conveyance to Starr Brothers, the alley and the twelve-foot strip afforded a twenty-four-foot entry way from the street to the property on the north side of the alley which Owens used as a blacksmith shop and also to the property conveyed to Starr Brothers, which was occupied by their creamery. Owens died in 1925 and the title to the property passed by descent to Florence Stengl, the present owner.

The sole issue is whether the twelve-foot strip in question became a public alley by prescription. Starr Brothers make no claim to a private easement over the land belonging to plaintiff, but contend that they derive their right to use the strip because the general public acquired a prescriptive right thereto under section 139 of article 8 of the Roads and Bridges act. (Ill. Rev. Stat. 1937, chap. 121, par. 152.) That section provides, in substance, that all roads used by the public as highways for fifteen years, and not vacated by law, are declared to be public highways. This court has frequently held that to establish a public highway by prescription under this statute there must be user by the public for the statutory period and such user must be adverse, under claim of right, continuous and uninterrupted, with knowledge of the owner of the estate, and yet without his consent. (*Koch* v. *Mraz,* 334 Ill. 67; *Doss* v. *Bunyan,* 262 id. 101; *Palmer* v. *City of Chicago,* 248 id. 201.) The burden of proving the existence of these facts rests on the party pleading the prescription. (*Bontz* v. *Stear,* 285 Ill. 599.) Starr Brothers claim that this burden is sustained by proof that the public, generally, had an unrestricted opportunity to use the strip and, in fact, made some use of it. This court has held, however, that where land is vacant and unoccupied and remains open to public use and travel, the mere travel across it without objection from the owners does not enable the public to acquire a road or highway over it. (*Town of Brushy Mound* v. *McClintock,* 150 Ill. 129; *O'Connell* v. *Chicago Terminal Transfer Railroad Co.* 184 id. 308.) In addition, we held in the *O'Connell case* that travel for a special purpose over unoccupied land is not the character of user required by the statute to establish a public highway by prescription.

In *Koch* v. *Mraz, supra,* where we denied that travel for the statutory period had established a public way by prescription we said: "The travel in and out of those

grounds has been either for the purpose of serving the cottages or the hotel or for the pleasure of looking about the grounds. The driveways through this territory are and have been but little used by the public to travel from one locality to another, as highways are generally used. The traffic has had to do almost entirely with the particular use to which the lots have been put." In *Thorworth* v. *Scheets,* 269 Ill. 573, which resembles the case at bar, a public way was held to have been established by user, but there the testimony showed that the alley had been used "not only by the owners of this property but by the public * * * as a public driveway from New York street to Main street," etc.

It appears from the record in this case that prior to 1919 the strip in dispute had been enclosed by a fence; since that time it has been open and unobstructed. Nearly all the witnesses testified that the main path of travel was over the alley which had been established many years before the disputed strip was made accessible. This is supported by the fact that most of the business houses with rear entrances are adjacent to the alley. Starr Brothers creamery is on the opposite side of the alley and to reach their place of business it is necessary to cross the strip in question. The evidence indicates that Starr Brothers used it as a place to park their milk and beer trucks and that those who made deliveries to them likewise drove over the strip. Every witness who testified to the use of the twelve-foot strip stated, on cross-examination, that most of the persons who used it were there for the purpose of transacting business at defendant's creamery. Only one witness testified that he had made a practice of using the strip as a public passageway. We think it clear that the disputed strip was used principally by Starr Brothers and those who made deliveries to them; that whatever other travel there was over the strip was incidental to reaching nearby places of business, and that it was not generally used as a public thoroughfare.

This evidence does not indicate a use of such character as is necessary, under the authorities above cited, to establish a public way by prescription.

Even though the public made some use of the strip as a highway, Starr Brothers failed to prove that such user was adverse, an element necessary to establish prescription. (*Gietl* v. *Smith*, 320 Ill. 467; *Koch* v. *Mraz, supra; Doss* v. *Bunyan, supra; Palmer* v. *City of Chicago, supra.*) Reliance is placed on cases permitting a presumption of adverse use (*Thorworth* v. *Scheets, supra; Phillips* v. *Leininger, supra; Lee* v. *Dickman,* 316 Ill. 529; *Mudge* v. *Wagoner,* 320 id. 357;) but Mrs. Stengl offered evidence that the public authorities did not make any adverse claim in the strip on behalf of the public. They levied taxes on the strip in 1936 and a special assessment for paving the abutting street, both of which Mrs. Stengl paid. These levies were inconsistent with any adverse claim of right by the public. *Illinois Central Railroad Co.* v. *City of Bloomington,* 167 Ill. 9; *Falter* v. *Packard,* 219 id. 356; see, also, *Palmer* v. *City of Chicago, supra; Wiehe* v. *Pein,* 281 Ill. 130; *Gietl* v. *Smith, supra.*

Starr Brothers' contention that the trial court erred in striking their testimony concerning conversations with Mrs. Stengl's deceased father is without merit. Mrs. Stengl claimed her right and title to the property as heir of the former owner. Where a party to a suit seeks to establish a claim in derogation of the property rights of a person now deceased that party cannot testify to conversations with the deceased in a suit against the latter's heirs. *Schneider* v. *Sulzer,* 212 Ill. 87; *Stodder* v. *Hoffman,* 158 id. 486.

The judgment is affirmed.　　　*Judgment affirmed.*