J. Paul Corbridge, Plaintiff-Appellee, *v.* Auburn Street Hardware, Inc., Defendant-Appellant.

(No. 71-207; ▮▮▮▮▮▮▮▮▮

Second District—April 27, 1972.

Miller, Hickey & Close, of Rockford, for appellant.

Maynard & Brassfield, of Rockford, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This was an action for declaratory judgment brought by the Plaintiff, Corbridge, asking that he and those holding under him had a common law easement over a portion of the premises of the defendant in the city of Rockford. On the date of trial the plaintiff amended his complaint and asked the court to declare the strip of land in question was a public highway within the meaning of Ill. Rev. Stat. 1969, ch. 121, sec. 2—202 contending that the property had been used as a public highway for more than fifteen years. The defendant asked for a continuance after the complaint was amended which the trial court refused to grant. The case was tried and the court held that a portion of the property in question was a public highway within the meaning of the aforementioned statute.

The property involved in this suit is located on the south side of Auburn Street in the city of Rockford. The plaintiff owned Lots 1 and 2 in Block 21 and the defendant owned Lots 3 and 4 in Block 21, Riverside Addition to the city of Rockford. These four lots are approximately 48 feet in width and 150 feet deep. The defendant owns the lots to the

east and the plaintiff owns the lots to the west. To the west on the plaintiff's property is an areaway 10 or 12 feet wide running south to the east-west public alley which apparently the plaintiff has chained off. To the east of defendant's property is an alley 16 feet wide which runs along the easterly edge of his property through to Myott Street one block south of Auburn. Immediately to the south of both plaintiff and defendant's property is an alley 20 feet in width which runs the entire length of both plaintiff and defendant's property forming a T intersection with the 16 foot alley.

There is a building on defendant's property which covers all of Lot 4 and the easterly 9 feet of Lot 3 leaving a vacant area of approximately 39 feet of Lot 3. In 1941 the building on Lot 4 and a portion of Lot 3, was constructed as a theatre; the 39 foot area to the west was used as a parking lot. The plaintiff's building apparently covers a goodly portion except the west 10 or 12 foot alleyway of Lot 1 and a portion of Lot 2 with part of the building extending almost to the lot line in the middle part of Lot 2 leaving a parking area on the east of Plaintiff's building both north and south of that part of the building which extends over approximately to defendant's property. The Auburn Theatre was owned at one time by J. Albert Johnson and while being used as a theatre by mutual agreement the parking area on Lots 2 of the plaintiff and 3 of the defendant were used in the daytime for customers in plaintiff's property and primarily at night for patrons of the theatre. The plaintiff purchased his property in 1952 and the Auburn Street Hardware Inc. purchased the theatre and converted it into a hardware store in 1967.

There is access to the property of the plaintiff both from Auburn Street on the north and the 20 foot alley on the south. Defendant contends, however, that it is necessary or desirable for semi-trailer trucks to use the parking area in question for deliveries as it is difficult for them to use the alley running north and south and then westerly to his premises on the south.

As indicated, on the date of trial, the plaintiff was given leave to file an amended complaint contending that the parking lot in question was a statutory public highway in public use for more than 15 years. The parking lot in question, to-wit: the westerly 39 feet of Lot 3 was paved with concrete by the Auburn Theatre when the theatre was constructed; defendant and his predecessors in title paid the taxes on Lot 3 covering the parking lot; paid for the removal of snow thereon; and made repairs to the cement parking area, including blacktopping. At one time the defendant asked the plaintiff to share in the removal of the snow between the buildings and the plaintiff told him that he had never paid for any maintenance of the property in question and was not consider-

ing paying any. The statute in question here provides in pertinent part: "* * * Highway—any public way for vehicular travel which has been laid out in pursuance of any law of this State or of The Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years, * * *." Ill. Rev. Stat. 1961, chap. 121, par. 2—202.

The testimony of the witnesses for the plaintiff in substance was that they went across the property as a matter of convenience to go to the premises of the plaintiff or the defendant; that they used it for the deliveries; had used it in going to and from school; and for delivering papers. The owner of a place of business at the westerly dead-end of the east-west public alley testified that trucks had used the property in question to get to his place of business but that the trucks could get to the place of business through the alley east of the Auburn Hardware building and by agreement with Mr. Jost of the Auburn Hardware Company he would only use the property in question when the alley was blocked. He further testified that the general public formerly had parked on the property in question during the day when the theatre was not in operation. Additionally, this witness testified that he could use the north-south driveway on the west portion of Corbridge's property for access but that it was now blocked with posts and a chain. The record indicates that Mr. Corbridge had blocked this alleyway on his property. Another witness testified he owned property on the south side of the east-west public alley and that he had used the property of the Auburn Hardware to go back and forth many times. He testified that he used the public alley to the east of the hardware building when he was forced to because of cars being parked on the property in question but that it was difficult to use the public alley. He further testified that customers of the Rathskeller restaurant parked on the property in question. The tenant of Corbridge leasing the rear part of the building testified that he had used the property in question but that delivery trucks delivered both to Auburn Street Hardware and to him through the public alley. The plaintiff in substance testified that he used the property in question for access for deliveries and for deliveries to his tenants. The plaintiff also put up a sign on the property on Lot 2 which read "Night parking courtesy of Illinois Painting Company." It can thus be seen that the property between the buildings primarily was used by the plaintiff and defendant and their customers or lessees as a matter of mutual agreement.

The plaintiff has cited a number of cases, to-wit: *Taylor v. Wentz* (1958), 15 Ill.2d 83, 153 N.E.2d 812; *Stevenson v. Meyer* (1957), 10 Ill.2d 335, 139 N.E.2d 740; *Van Amburg v. Reynolds* (1939), 372 Ill. 317, 23 N.E.2d 694; *Verh v. Morris* (1951), 410 Ill. 206, 101 N.E.2d 566;

*Mudge v. Wagoner* (1926), 320 Ill. 357, 151 N.E. 276. In all five of these cases the roadway ultimately found to be a public highway was the only means of access to the plaintiff's property. As an example, in *Stevenson, supra,* the road in question was a cinder road extending across the southerly part of defendant's property running from the highway to plaintiff's property and to a cemetery. This was the only access to either the cemetery or to plaintiff's property. The roadway had been used by the public for access to the cemetery for over sixty years.

In *People v. Waitkus* (1964), 30 Ill.2d 335, 196 N.E.2d 668, the Supreme Court considered the use of a road for some fifty years and the plaintiff contended there that it was a public highway within the meaning of Sec. 2—202 of the Illinois highway code. The court there held that there the road was used mainly to go to and from a farm, and although used by the public and another farm owner, such use was not by the general public within the meaning of this statute.

In *Gietl v. Smith* (1926), 320 Ill. 467, 151 N.E. 253 we find a situation somewhat similar to the facts in this case. In *Gietl* certain property owners brought an action to restrain the owner of property in the City of Springfield for blocking a 16 foot alleyway located on the property of the defendant. The case was referred to a Master in Chancery and he found that for 40 years the strip had been used by the public as an alley and the trial court enjoined the defendant from obstructing such alley. The Supreme Court in reversing the trial court stated:

"The use of vacant and unoccupied land by the public is presumed to be permissive and not adverse. To establish a highway or public way by prescription it is necessary that the use shall be under a claim of right, adverse, open, notorious, exclusive, continuous, and uninterrupted for the statutory period. [Citations.] There must be something more than mere travel by the public over uninclosed lands to create a highway by prescription. Use by a few individuals, and not by the public generally does not constitute such use by the public as creates title by prescription. The user must be under claim of right in the public and not by mere acquiescence on the part of the owner * * *."

In *Swinford v. Roper* (1945), 389 Ill. 340, 59 N.E.2d 863, the Supreme Court again considered the use of a portion of the defendant's property use of a portion of the defendant's property under a contention that it had ripened into a public highway within the meaning of Sec. 2—202, Chapter 121, *supra.* In holding that it had not and in reversing the trial court the Supreme Court stated:

"* * * Where land is originally laid out and used as a private way for the use of adjoining landowners, its use by the public as well does not necessarily make it a public highway where the owner keeps it up

and the public use is not clearly hostile or under a claim of right. To establish a prescriptive right in the public where it is claimed that such property constitutes a part of a public highway, it must be shown that a well-defined line of travel existed over the property for a period of fifteen years. The use must be adverse, under claim of right, continuous and uninterrupted, with the knowledge of and without the consent of the owner of the estate. Permissive use cannot ripen into a prescriptive right. [citations]"

The court further stated in substance that the use by the public contemplated by this Statute is adverse use rather than permissive. In the instant case we find that the use here was permissive.

In *Stengl v. Starr Bros.* (1938), 370 Ill. 118, 18 N.E.2d 179 the sole question was whether or not a 12 foot strip in question became a public alley by prescription. The court there stated:

"* * * This court has held, however, that where land is vacant and unoccupied and remains open to public use and travel, the mere travel across it without objection from the owners does not enable the public to acquire a road or highway over it. [citations] In addition, we held in the O'Connell Case that travel for a special purpose over unoccupied land is not the character of user required by the statute to establish a public highway by prescription."

Interestingly enough, in *Stengl* the court further said that the plaintiff "failed to prove that such user was adverse, an element necessary to establish prescription." The court also pointed out that the defendant therein had paid taxes on the property in question and

"* * * that the public authorities did not make any adverse claim in the strip on behalf of the public. They levied taxes on the strip in 1936 and a special assessment for paving the abutting street, both of which Mrs. Stengl paid. These levies were inconsistent with any adverse claim of right by the public." [citations].

In *Miller Bros. Lumber Company v. Mayfair Lumber Co.* (1972), 279 N.E.2d 389, the Appellate Court again considered the question of the right of a public highway by prescription and cited with approval *Stengl, supra.* At page 392 the court stated:

"* * * where land is vacant and unoccupied and remains open to public use and travel, the mere travel across it without objection from the owners does not enable the public to acquire a road or highway over it."

Applying a further statement to the facts in the instant case the question might arise as to why the highway by prescription was not created over that portion of the plaintiff's property adjoining defendant's property which was open to and used by the same parties that used the defend-

ant's property. The court in *Miller Bros.* went on to say:

"*   *   * And in our view, it is unreasonable to urge that a highway by prescription has been created as to defendant's portion of the roadway, but apparently not as to that part owned by plaintiff *   *   *."

Attention is also directed to the cases cited by the appellant, *Rose v. City of Farmington* (1902), 196 Ill. 226, 63 N.E.631 in which the court held that the use therein relied upon for a period of some 30 years was not adverse and stated that the use had to be shown to be established for the benefit of the claimant or was accompanied by a claim of right and was not regarded by the parties

"*   *   * merely as a privilege or license, revocable at the pleasure of the owners of the soil *   *   * While the acquiescence of the owners may be shown by his acts, he is allowed to testify to what his intention actually was, to be considered in connection with all the other facts and circumstances in the case. [Citation.] In the case at bar the alleged way was merely a convenience for the owner of the lot north of it. It was not necessity, for he could drive over his own lot to reach that portion lying east of appellee's lot. It is a matter of common observation that the public makes use of any open, uninclosed space which affords a more convenient way of reaching any given place than the regular way would; and it would be contrary to established legal principles, and to natural justice as well, to allow the public, under such circumstances, and by the mere acquiescence of the owner, to acquire the permanent right of way. [citations] Mere permissive use is never sufficient *   *   *."

In *Jobst v. Mayer* (1927), 327 Ill. 423, 158 N.E. 745, certain land owners contended that a private alley had become a public alley by prescription. The court stated at 747:

"*   *   * To sustain this contention there must be proof of something more than mere travel by the public over the uninclosed lands. The user must be under a claim of right in the public and not by mere acquiescence on the part of the owner. A permissive use never ripens into a prescriptive right. To establish a highway or a public way by prescription the use must necessarily be under a claim of right, adverse, open, notorious, exclusive, continuous, and uninterrupted for the statutory period."

In *Koch et al. v. Marz et al.* (1929), 334 Ill. 67, 165 N.E. 343 the facts there are not particularly applicable to the instant case. However, the court stated at 346:

"*   *   * In order to establish a prescriptive right in the public, where it is claimed that such property constitutes a part of a public highway, it must be shown that a well-defined line of travel existed over the

property for a period of 15 years. The use must be adverse, under claim of right, continuous, and uninterrupted, with the knowledge of the owner of the estate, and yet without his consent. [citations]"

Lastly, in *Piper v. Warren* (1965), 61 Ill.App.2d 460, 210 N.E.2d 71 the trial court held that the plaintiffs had acquired a permanent easement by prescription over a driveway between property owners. The Appellate Court in reversing stated at page 73:

"* * * Moreover, defendant contends that the evidence clearly demonstrates that the use of the driveways was by implied consent and license of the parties. If this was so, the enjoyment under such a license is regarded as permissive and not of right, and no title is acquired under it regardless of how long it continues. [citation.]"

That appears to be the exact situation here.

The plaintiff in this case attempted to claim a public highway by right of prescription over the westerly 25 feet of defendant's property. The trial court found that there was a public highway over the westerly 15 feet of Lot 3 of the defendant's property. There is no explanation in the record as to the reason for the court's finding.

■■ In our opinion the essential elements of the creation of a public highway by prescription are lacking in this case. The mutual agreement by the property owners to use each other's property for parking and deliveries and the occasional use of an open area by the public as a convenience do not constitute adverse use by the public within the meaning of the statutory provision. To hold otherwise would necessitate either the fencing of property or posting thereon and would as an end result create chaos in any open space in a business area. It is specifically noted as indicated before, this case differs entirely from those cases where there is no access to the property. Here, the plaintiff has access to his property from the north and from the alley on the south. As a matter of convenience he wishes to use this parking area for deliveries by semi-trailer trucks. That hardly constitutes use by the public resulting in prescription.

■■ Defendant also contends that where the court allowed the plaintiff to amend his complaint seeking an easement by implication to a complaint seeking a public highway by implication on the day of trial and denied the defendant's motion for continuance was error. In view of our opinion herein this cause becomes moot and we do not pass upon it.

For the foregoing reasons the judgment of the trial court is reversed and judgment is entered for the defendant.

Judgment reversed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.