Leon B. Andrews, et al., Plaintiffs, v. City of Springfield, Illinois; John H. Hunter, as Commissioner of Public Property of the City of Springfield, Illinois; Township of Woodside, Sangamon County, Illinois; Harry D. Mullen, as Highway Commissioner of Woodside Township, Sangamon County, Illinois; Township of Ball, Sangamon County, Illinois; Edsel F. Gilreath, as Highway Commissioner of Ball Township, Sangamon County, Illinois; Township of Rochester, Sangamon County, Illinois; O. J. Taylor, as Highway Commissioner of Rochester Township, Sangamon County, Illinois, Defendants.
City of Springfield, Illinois, Counter-Plaintiff, v. Township of Woodside, Sangamon County, Illinois; Harry D. Mullen, as Highway Commissioner of Woodside Township, Sangamon County, Illinois; Township of Ball, Sangamon County, Illinois; Edsel F. Gilreath, as Highway Commissioner of Ball Township, Sangamon County, Illinois; Township of Rochester, Sangamon County, Illinois; O. J. Taylor, as Highway Commissioner of Rochester Township, Sangamon County, Illinois, Counter-Defendants.
City of Springfield, Illinois, Defendant-Counter Plaintiff-Appellant, and John H. Hunter, as Commissioner of Public Property of the City of Spring-

201

field, Illinois, Defendant-Appellant, v. Leon B. Andrews, et al., Plaintiffs-Appellees, and Harry D. Mullen, as Highway Commissioner of Woodside Township, Sangamon County, Illinois; Paul Bancroft, as Highway Commissioner of Ball Township, Sangamon County, Illinois; and Raymond Ramsey, as Highway Commissioner of Rochester Township, Sangamon County, Illinois, Defendants-Counter Defendants-Appellees.

**Gen. No. 10,586.**

Fourth District.

April 5, 1965.

I. J. Feuer, of Springfield, for appellants.

Brunsman and Giffin, of Springfield (Clell L. Woods, of counsel), for plaintiffs-appellees; R. Garrett Phil-

lips and Paul F. Wanless, of Springfield, for defendants-appellees and counter-defendants-appellees.

EBERSPACHER, P. J.

In 1930, the City of Springfield acquired a large area of land located in part of each of three Sangamon County Townships (Ball, Rochester and Woodside) and commenced the construction thereon of an artificial lake known as Lake Springfield, for the creation of a system of waterworks and water supply. As the lake developed, the City laid out the marginal shorelands owned by it adjacent to the lake, into areas and tracts of land and began leasing such tracts for a term of sixty (60) years to plaintiffs or their predecessors and assignors. No diagrams or plats of the areas, or tracts or roadways of the lands adjacent to the lake have been filed as statutory plats in the Office of the Recorder of Deeds of Sangamon County, nor have any of the roads ever been conveyed by the City. The standard lease between the City and its shoreland lessees contains the following pertinent provisions:

"1. THIS LEASE, made this . . . day of . . . , 19 . . , by CITY OF SPRINGFIELD, ILLINOIS, hereinafter called 'City', to . . . hereinafter called 'Custodian', WITNESSETH, That:"

"3. NOW THEREFORE, in furtherance and in aid of said public purposes, the City does hereby lease to the Custodian that part of said marginal land described as:

Tract

of Lake Lands in Section . . . in . . . Township . . . in Sangamon County, Illinois, as shown by unrecorded plat thereof in the office of the Department of Public Property of the City; which Tract includes a lot of the same number hereinafter

205

mentioned; together with means of access thereto over other land of the City, along such route as the City may from time to time provide;"

"PREPAYMENT OPTION. . . . The rent remaining after the exercise of said option is not subject to prepayment but must run throughout the entire term of the lease, continued revenue from the leased premises being deemed essential to best promote the mutual interests of the Custodian and the City in the supervision, care, maintenance, beautification and improvement of the shoreland surrounding said lake."

"7. GENERAL REGULATIONS. The Custodian will keep all of the leased premises in sanitary condition, decent, neat, and free from noxious weeds and debris, and will maintain all improvements, thereon attractive in appearance and in good repair, . . ."

The lessees thereafter improved the tracts leased to them by the construction of residential dwellings thereon. The City maintained until February 1, 1961, thirty-five (35) roadways varying in width from ten feet (10') to twenty feet (20'), upon marginal shorelands owned by it outside its corporate limits which have been used by lessees and by the general public since their construction. The roadways are not legally described in any plat of the City, as to their locations, width and length. The land occupied by the roadways is not enclosed by fences. The City, up to February 1, 1961, placed road signs on, removed snow from, cindered in the wintertime, cut weeds, policed, graded, oiled, applied rock and asphalt, placed culverts under and ditched along the edges of these roads, using City equipment and employees for the work and maintenance of the roads involved.

206

All of said roadways were laid out and constructed by the City except the city-owned road servicing North Shore area which was laid out and constructed by the County of Sangamon. They were of earth base topped with liquid asphalt and gravel. All, except Caravan Lane, have been in existence and use for at least fifteen (15) years prior to February 1, 1961, and during all this time no barriers, obstructions or prohibition of use thereof to vehicular traffic have been erected by the City or by anyone else and there has been common enjoyment and use of all these roads, except Caravan Lane, for over 15 years. None of the roadways joins or intersects with another but each of them leads to or from a county or township highway. Twenty-seven (27) of the roads enter and exit at the same entrance. These terminate in a cul de sac or at a residence; in some cases, at a private garage door.

Lessees have been assessed and have paid road and bridge taxes to the respective Townships in which their leaseholds are located upon the value of those leaseholds. The respective Highway Commissioners have not included the mileage of these roads in computation for motor fuel tax, nor is there any evidence of the Highway Commissioners having ever done anything toward the maintenance of the roads.

Thirty-five (35) of the lessees, each of whom maintained valuable residences and other improvements on their respective leased tracts, to each of which there is no other roadway leading in or out, filed their complaint for a declaratory judgment against the City, John H. Hunter its Commissioner of Public Property, the respective Townships and their respective Highway Commissioners. They asked that the court declare the duties of the plaintiffs, defendant City and defendant John H. Hunter as Commissioner of Public Property of the City, as to the providing and maintenance of

207

the roads, estoppel of said defendants from refusing to repair and maintain and that the City has the duty to provide, keep and maintain the roads in a reasonable state of repair, and said defendants failure to do so. The complaint further prayed for injunctive relief against the City and the City Commissioner from failing to maintain the roads, and direction to maintain the roads in a reasonably safe condition and in a reasonable state of repair.

Four counts of the complaint prayed for similar declarations and injunctive relief against the three Townships and their respective Highway Commissioners. These four counts were dismissed on motion, by a ruling from which there is no appeal before us.

The City and City Commissioner denied any duty on their part to provide maintenance and repair of the roads and denied that plaintiffs were entitled to the relief requested; they also alleged affirmative defenses to each of the counts against them, and filed counter-claims against the three Townships and their respective Highway Commissioners, praying for declaratory judgments against the Townships and their Highway Commissioners as to the maintenance and repair of the roads. The Townships and their respective Highway Commissioners denied any duty to repair and maintain and contended the City should repair and maintain the roads.

The plaintiff lessees, referred to as Custodians in the leases, and the City, stipulated that the City had acquired the land and leased the tracts pursuant to provisions of the statutes providing for provision of a water supply, (c 24, §§ 11–126–1, 3 and 4, Ill Rev Stats 1961, which were formerly §§ 75–1, 3 and 4, c 24); and that by the ordinance creating the City Water, Light and Power Department and making it a subordinate department to the Department of Public Works, the control and management of the area known

as Lake Springfield was given to the Commissioner of Public Property.

The trial court, by its judgment, found that the duty to maintain the roadways was upon the City, and not upon the lessees or any other person, public official or public body; that the roads had not become public highways under any statute of the state; and declared that the City and its Commissioner of Public Property and/or his successor in duty, have the duty toward the plaintiffs and others similarly situated to exercise reasonable care and diligence in the repair, maintenance and upkeep of the roads involved to the end that they shall be kept in a reasonably safe condition, reasonably fit for vehicular traffic and in a reasonable state of repair, and in accordance therewith directed the City and its Commissioner to proceed with reasonable diligence and dispatch to maintain the roads in a reasonable safe condition and in a reasonable state of repair so as to be fit for vehicular traffic; and further found that neither plaintiffs nor the City was entitled to any relief against the Townships or their respective Highway Commissioners. From this judgment, the City and its Commissioner of Public Property appeal.

Appellants City and its Commissioner of Public Property contend that the roads involved are Township Roads as defined in the Illinois Highway Code, citing sections 2–103, 2–202 and 2–205.

A rural highway or rural road is defined by the Illinois Highway Code, sec 2–218, as a "highway or road outside the corporate limits or any municipality," and under 2–103 such roads are under the Township and Road District System, if they are "not a part of the State Highway System, County Highway System or Municipal Street System." That the roads are a part of the State Highway System or County Highway System is contended by none of the parties. But to

209

impose the obligation of maintenance upon the Township Highway Commissioners it must also appear that the roads are not a part of a Municipal Street System as defined by section 2–104 of the Illinois Highway Code. There a Municipal Street System is defined as including "existing streets and streets hereafter established in Municipalities which are not part of the State Highway System or County Highway System, together with roads outside their corporate limits over which they have jurisdiction pursuant to this Code or any other Statute."

■■ The original jurisdiction of the City over the tract acquired in 1930, was pursuant to an "other Statute," authorizing its acquisition for purposes of providing a water supply, and authorizing the leasing of portions to custodians to construct, maintain, use and occupy dwellings thereon, on such terms and conditions and subject to such rules and regulations and with such powers and duties as may be determined by the City authorities, c 24, § 11–126–3 and § 11–126–4. The City properly construed these statutes as authority to lay out and maintain access roads to the various leases, for some twenty-five(25) years. The enactment of section 2–104 of the Illinois Highway Code in 1959, defining a Municipal Street System, in our judgment, did not destroy that authority, but recognized it by the use of the words "or any other Statute." Two of the roads are in the City limits, all are on property owned by the City, and with three exceptions are not on the leaseholds. We do not believe that section 2–104 of the Highway Code requires that roads, to be a part of the Municipal Street System, must bear any relationship to the streets in the corporate limits, or that they must join or intersect streets within the city limits under the factual situation with which we are presented.

210

■ We conclude that the roads, over which the City maintained sole jurisdiction since their construction to February 1961, are not part of the Township and Road District System under section 2–103 of the Illinois Highway Code. Since they are not part of that system, they do not meet the requirements of a township road as defined in § 2–205 of that Code. It necessarily follows that there is no duty on the defendant Townships and their respective Highway Commissioners, who have never asserted, claimed or exercised any jurisdiction over these roads, to maintain or repair them.

■ Appellants contention that the roads have, by use of the public for fifteen (15) years, become public highways, within the meaning of section 2–202 of the Highway Code, is not supported by the evidence, nor by Koch v. Mraz, 334 Ill 67, 165 NE 343. From the evidence it appears that their use by the public was incidental to their main purpose, which was and is to provide means of access to the leaseholders. In Koch v. Mraz, supra, the court said;

"Accordingly, these lots were laid out, and sold to different owners, with the right of ingress and egress over the unsold portions of that territory. The travel in and out of those grounds has been either for the purpose of serving the cottages, or the hotel, or for the pleasure of looking about the grounds. The driveways through this territory are and have been but little used by the public to travel from one locality to another, as highways are generally used. The traffic has had to do almost entirely with the particular use to which the lots have been put. A road laid out and kept up by the owners of the grounds over which it lies will not become a public highway

211

merely because, for a period of 15 or more years, there was not continuous or frequent objection to its use in going to and from the lots in that territory. To so hold would be to render the ownership of private drives precarious, indeed. The fact that strangers may have driven in to view the grounds is not evidence that such use was under adverse claim of right in the public so to do."

While the case of People v. Waitkus, 30 Ill2d 335, 196 NE2d 668, may be distinguished by the fact that the road in question was narrow and largely unimproved, Koch v. Mraz, supra, is cited therein with approval, and we note that some of the roads in the Lake Springfield area are only 10-foot width, too narrow for two cars to pass, and conclude that the Waitkus case supports our conclusion on this points.

Since the roads are not public ways on this theory, they do not qualify as part of the Township or Road District System, and the Townships and Highway Commissioners have no duty to maintain.

█ Alternatively, appellants contend that these roads are within the meaning of section 2–202 of the code, because they "connect a subdivision or platted land with a public highway and which has been dedicated for the use of the owners of the land included in the subdivision or platted land where there has been an acceptance and use under such dedication by such owners, and which has not been vacated in pursuance of law." A plat to establish a dedication must follow the requirements of the statute. Waugh v. Leech, 28 Ill 488. A plat will not convey the fee of the streets, therein, unless made out, certified, acknowledged and recorded in strict conformity with the statute, Ryerson v. Chicago, 247 Ill 185, 93 NE 162. It is stipulated, that the City laid out the lands adjacent to the lake into areas and tracts of land on unrecorded plats, which

were placed on file with the City. Therefore, these roads do not connect a subdivision or platted land within the meaning of sec 2–202.

This court agrees with the trial court that the language used in that section applies to the typical subdivision or platted area outside the corporate limits of a City privately inspired and promoted. Here there were no landowners except the City, and the City certainly did not intend to dedicate the roads to the use of the landowner, i. e., the City itself. No dedication would be required. Acquiesence in a permissive use can never be said to show an intent to dedicate land to public use. Leonard v. Pearce, 348 Ill 518, 181 NE 399; People ex rel. Markgraff v. Rosenfield, 383 Ill 468, 50 NE2d 479.

This now brings us to the issue between the City and its lessees, or custodians, as to the duty of the maintenance and repair of the roads. The City and its Commissioner contends that they have no duty to do so; that in the absence of an express covenant or stipulation by the landlord to make repairs, the landlord is not bound to make repairs to the leased property or to keep it in repair. They further contend that it is the duty of the owner of an easement to keep it in repair, in the absence of an express agreement in the instrument. We have no quarrel with the cited authorities so holding, but do not consider them applicable in this case. Whether the right to use these roads is treated as a lease or easement, the provisions of the lake leases, taken with the City's exercise of dominion and jurisdiction over the roads for 25 years, is conclusive.

The statutory authority under which the lake was created, and under which the leases were made was a broad authority. The City could lease "for such rental and on such other terms and conditions and subject to such rules and regulations and with such

■■■■■■■■■■■■

powers and duties as may be determined by the corporate authorities." They could have specifically imposed the duty of constructing the roads or maintaining them thereafter, upon the leaseholders. As a practical matter they did not see fit to do so; for few leases would have been negotiated on such a basis. The City dictated the terms of the leases, leasing a particular tract "together with means of access thereto over other land of the City, along such routes as the City may from time to time provide." Obviously they reserved the right to prescribe the route from "time to time," but we do not believe that had they done so, they would have insisted on the lessees constructing or maintaining new roads. Such an interpretation, or provision in the lease would have had as obvious an effect as a provision for the construction or maintenance of the initial roads.

The word "provide," for 25 years meant "construct and maintain" to the City; and they cannot now be heard to contend that they constructed and maintained out of the goodness of the municipal heart, without legal authority or propriety. The mode of our times, under the facts in this cause, implies that "means of access" must mean a roadway fit for vehicular traffic, in a reasonable state of repair.

■ If the leases are ambiguous as to the duty to repair, or as to what the word "provide" included; the City created the ambiguity. It is a universal rule of law that an instrument uncertain in its terms is to be most strongly construed against the party thereto who causes the uncertainty to exist, if it may be reasonably done. 12 ILP Contracts sec 46, 17 Am Jur2d Contracts sec 275.

■ ■ The ownership of the City was for the limited statutory purpose of protection, promotion and development of the lake project. Its right to prescribe the routes, to determine the type, width and surface

214

of the roads rightfully belonged to it under the authorizing statutes, and by providing the means of access it kept control. The parties provided a 25-year-old interpretation of the leases. It is to be assumed that they knew best what was meant by the terms and are the least likely to be mistaken as to intention; that each party was alert to protect its own interests and to insist on its rights; and that whatever was done by the parties during the period of performance was done under terms as they understood and intended them to be. Parties are far less likely to have been mistaken as to the meaning of the language in the leases when they were in harmony, than when subsequent differences have impelled them to resort to law and one of them seeks a construction at variance with their earlier practical construction of the provisions of the leases. Courts ordinarily follow such adopted construction when it is within the permissible interpretation of the language used. 17 Am Jur2d Contracts sec 274.

██ ██ Appellants further contend that the court erred in granting plaintiffs injunctive relief in an action for declaratory judgment, since the Declaratory Judgments Act, c 110, § 57.1(3), provides for a petition to show cause if further relief based upon the declaration becomes necessary or proper. Section 57.1 subpar (1) of that Act provides "The Court may, in cases of actual controversy, make binding declarations of rights, having the force of final Judgments whether or not any consequential relief is or could be claimed." This provision contemplates that in a proper case consequential or incidental relief may be claimed and obtained in the original judgment order declaring the rights, and the language of subparagraph (3) does not prevent the granting of such relief. Sufficient evidence of condition of the roads sustained the trial court's finding of their being in bad repair and unfit

215

for vehicular traffic and its order to proceed with reasonable diligence and dispatch to maintain the roads in a reasonable safe condition and in a reasonable state of repair. Illinois cases have recognized that the granting of consequential relief in the original declaratory judgment is not an abuse of sound judicial discretion. Koziol v. Village of Rosemont, 32 Ill App2d 320, 177 NE2d 867; Burgard v. Mascoutah Lumber Co., 6 Ill App2d 210, 127 NE2d 464.

 Appellants further contend that the court erred in awarding judgment against the defendant, John H. Hunter as Commissioner of Public Property, pointing out that the only lessor is the City of Springfield. Suffice it to say that the defendant, John H. Hunter was named as a party defendant in his official capacity and not as an individual. The Department of Public Property was by ordinance given jurisdiction and control of the Lake Springfield area. The order against the City would be ineffective unless the responsible officer whose duty it was to act, although the action was to be that of the corporate body, was made a party to the suit. The Commissioner of Public Property was that responsible officer of the City and was a proper party to the suit and judgment was properly entered against him in his official capacity.

The judgment of the Circuit Court of Sangamon County is affirmed.

GOLDENHERSH and MORAN, JJ., concur.