People of the State of Illinois ex rel. Ruth Porten, Petitioner, v. LeRoy Geske, Highway Commissioner of Nunda Township, McHenry County, Illinois, Respondent.

Gen. No. 69–91.

Second District.

January 27, 1970.

Rehearing denied March 16, 1970.

Steinbrecher and Narusis, of Crystal Lake (Bernard V. Narusis, of counsel), for appellant.

Frederick J. Steffen, of Elgin, for appellee.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This action in mandamus was brought by an owner of land (petitioner) in Porten's Hickory Knoll Subdivi-

sion in Nunda Township, McHenry County, against the Township Highway Commissioner (respondent) to require the respondent to make the roads of that subdivision a part of the township road system for purposes of future maintenance. The petitioner proceeded on two theories: first, that there had been a common-law dedication of the subdivision roads to the township, and second, that the subdivision roads had been used by the public as highways for fifteen years or more.

The case was tried before a jury and its verdict found in petitioner's favor on both theories. The trial court rejected the verdict on the issue of common-law dedication but entered judgment for the petitioner on the verdict that the interior streets of the subdivision had been used by the public as highways for fifteen years or more. This appeal is taken only from that part of the court's judgment which was entered in favor of the petitioner.

The respondent denied that he ever did any work on the roads in his official capacity. He also testified that he never directed the use of township equipment or the placing of township materials on the roads in question. He did admit that township snow plowing equipment went through a portion of the subdivision but explained that that was because the township road entering the area ended in a steep hill where the plows could not be turned and it was, therefore, necessary to go through the subdivision to turn the plowing equipment. He also testified that on one occasion the township helped to get a stranded school bus out of the subdivision and sometimes the township plowed snow to help people with heart conditions get to their doctors. In the usual course of events, the township did not plow all of the streets in the subdivision.

The petitioner testified that the township had installed a culvert under one road and had done some occasional

153

patching. The petitioner also testified that the subdivision roads were used by school buses and delivery vehicles.

Documentary evidence was introduced to show the formation of the Hickory Knoll Community Club incorporated in 1940 for the purpose of installing roads. The corporate records of the club were admitted showing forty-eight different entries covering the period 1941 through 1964. These items had generally to do with road maintenance and covered such matters as calling for volunteers to help with road work, passing expenditures for gravel, grading, clearing rocks and stumps, installing culverts and signs, oiling the roads, providing drainage, blacktopping and widening. In the 1950's Roy Geske, the respondent's father, who was then the township road commissioner, had blacktopped the roads but the minutes of the club clearly show that he submitted a bill and was paid for this work.

In summary then, the total of the petitioner's proof indicates that the respondent installed one culvert and did certain patching and that he did snow plowing on certain roads. The respondent explains the snow plowing by the fact that his plows were unable to turn around without entering the subdivision. The question presented to us is whether this evidence is sufficient to support the verdict of the jury and the finding of the trial court.

We recognize that we have no right to substitute our judgment for the judgment of the trier of fact and that we must affirm unless the decision is contrary to the manifest weight of the evidence, Woodrick v. Smith Gas Service, Inc., 87 Ill App2d 88, 97, 230 NE2d 508 (1967). However, when the decision is contrary to the manifest weight of the evidence, then it is our duty to reverse, Elgin Lumber & Supply Co., Inc. v. Malenius, 90 Ill App2d 90, 97, 232 NE2d 319 (1967). We conclude in this case that the petitioner has not sustained her burden and that we must reverse.

154

Section 2–202 of the Illinois Highway Code (Ill Rev Stats 1967, c 121, § 2–202) defines a public highway as "any public way for vehicular traffic which has been . . . used by the public as a highway for fifteen years. . . ." Under sections 6–201 and 6–201.8, the township highway commissioner is required to maintain and improve the roads of his district. Under section 6–305, he need not lay out, widen, alter or vacate a roadway if he finds that that action is not in the public or economic interests and, under section 6–325, a roadway need not be included in the township road system if it does not comply with the specifications established for roadways by the county board. In the case at bar it is clear that the roadways in question do not comply with the county board's specifications.

In the case of Taylor v. Wentz, 15 Ill2d 83, 88–89, 153 NE2d 812 (1958), the Supreme Court said:

"In determining whether a public highway has been established by user, the test is not the number of persons actually using it, but the character of that use,—*i. e.*, whether or not it was by members of the public generally under claim of a free and unrestricted right to do so."

In the case of Koch v. Mraz, 334 Ill 67, 165 NE 343 (1929), the Court held that a road did not become a highway when its only use was as a means of access to a group of summer cottages and a hotel. At page 77, the Court said:

"A road laid out and kept up by the owners of the grounds over which it lies will not become a public highway merely because for a period of fifteen or more years there was not continuous or frequent objection to its use in going to and from the lots in that territory. To so hold would be to render the ownership of private drives precarious, indeed. The fact that strangers may have driven in to view the

grounds is not evidence that such use was under adverse claim of right in the public so to do."

In the case of Harris v. Schwartz, 351 Ill App 351, 355, 115 NE2d 345 (1953), the Court said, "The mere fact that residents, visitors, and people serving the residents, used the road did not satisfy the requirements necessary to establish a public use." See also Andrews v. City of Springfield, 56 Ill App2d 201, 205 NE2d 798 (1965).

The case of People v. Waitkus, 30 Ill2d 335, 196 NE2d 668 (1964) involved a set of facts very similar to those in the case at bar. In that case there was evidence of a few instances wherein the township commissioner did work on the roads. However, in reversing, the Court, at page 339, said:

"There is no showing of any continued or systematic maintenance for 15 years or any period of time. These acts fall far short of any claim of right in the public.

"Many acts of dominion of defendant over the property inconsistent with a claim of right of the public were shown. In 1943 defendant's father posted signs on the road of 'No Trespassing'; 'Private Property' and 'Keep Out,' which remained posted until after this litigation was commenced. Defendant spent substantial sums of money each year over a period of years to maintain the road. Such acts of dominion and control are inconsistent with a claim of right by the public."

While the petitioner in this case did not erect any "No Trespassing" signs, or similar signs, it is clear from this record that, over the years, petitioner spent considerable money for road maintenance, culvert installation and the like. These acts are inconsistent with the present claim.

156

It appears to this Court that a finding that public roads had been created by the infrequent and minor acts exhibited on the part of the respondent in this case would be contrary to the case law cited herein. We, therefore, must reverse the order of the trial court.

Reversed.

ABRAHAMSON and SEIDENFELD, JJ., concur.