672

EUGENE STEVENSON, La Salle County Superintendent of Highways, Plaintiff-Appellant, *v.* FRANCIS D. COSGROVE, Peru Township Road Commissioner, Defendant-Appellee.

Third District No. 75-78

Opinion filed May 20, 1976.

Frank Yackley, State's Attorney, of Ottawa (Joseph Lanuti, Assistant State's Attorney, of counsel), for appellant.

Louis E. Olivero, of Peru, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Eugene Stevenson, La Salle County Superintendent of Highways, filed this mandamus action to compel Francis D. Cosgrove, Road Commissioner for Peru Township, to provide maintenance for West Lynnwood Drive located in the First Addition of Lynnwood Subdivision, an unincorporated area in Peru Township. Cosgrove defended the suit on two grounds: (1) the street had never been accepted into the township road system, and (2) available township road funds were insufficient to pay the cost of repair and maintenance work. Judgment was entered on the jury verdict in favor of defendant, and plaintiff appeals.

The plat for Lynnwood Subdivision's First Addition was filed in 1965. West Lynnwood Drive provided access into part of the subdivision from South Bluff Road and was designed to end in a cul-de-sac. However, before the street was completed, a plat for the Second Addition was filed which included a street extending West Lynnwood Drive into the Second Addition. As a consequence, the original cul-de-sac would not be needed. The Second Addition was never completed, and its streets have never been accepted by the township because they do not meet the county's specifications. At the time of trial, West Lynnwood Drive ended approximately at the boundary between the First and Second Additions where a barricade was placed across the road.

A letter from plaintiff to the County Industrial Development and Planning Committee, dated August 21, 1968, was introduced into evidence, which stated:

"An inspection of [Lynnwood] subdivision was made and it is the opinion of this office that the first subdivision cannot be accepted until the cul-de-sacs are completed and the other minor details, listed on the enclosed memos, are taken care of.

The second subdivision has now badly deteriorated and the bond which has been posted will not now cover the construction of

the roads due to the fact that much of the work which was previously completed must now be reworked.

I recommend that the Committee or a subcommittee inspect this subdivision and take appropriate action to get the first subdivision in an acceptable condition this construction season and either get the second subdivision completed or abandoned."

The following year, although the cul-de-sac for West Lynnwood Drive had not been completed, plaintiff apparently decided the streets in the First Addition were acceptable. On October 21, 1969, at plaintiff's request, defendant sent a letter to plaintiff stating:

"This is to advise that upon inspection October 17, 1969, I find the roads in Lynnwood 1st Subdivision are acceptable to me. With conditions set forth by County Superintendent of Highways."

The following letter was then sent by plaintiff to the County Board Committee on October 22, 1969:

" * * * I find the roads in Lynnwood Subdivision acceptable to me at this time.

This acceptance is made with the condition that the portion of West Lynnwood Drive, that was disturbed with the addition of Lynnwood 2d Subdivision will be restored, including a new surface, before the roads in Lynnwood 2nd Subdivision are accepted."

Beginning in 1970, after the road was blacktopped, defendant plowed snow and salted West Lynnwood Drive when needed so that a doctor who lived in the subdivision would have access in and out of his home. In 1972 defendant occasionally patched holes, and thereafter, on advice of counsel, he provided limited repairs for safety purposes only, such as patching holes and placing several loads of gravel in an area where erosion had caused a soil slippage as the edge of the road washed away. The road itself had been cut out of a bluff, and the topography dropped sharply downhill to the Illinois River. At the location of the slippage, the road was passable by only one car at a time. Estimates for the cost of permanently repairing the road ranged from $50,000 to $90,000.

There was also evidence that defendant had installed a culvert on the road at one time, that West Lynnwood Drive was considered a township road for purposes of determining motor fuel tax revenues, but that it was not designated as a township road on a map sent by plaintiff to defendant in relation to a bridge project. Plaintiff testified that West Lynnwood Drive was inspected by him during and after construction, and that, according to his recollection, it met the standards and specifications of the county subdivision regulations in effect at the time the plat was approved and filed in 1965. However, plaintiff could not testify to any facts which were the basis for his approval.

In March of 1973, three residents of the subdivision submitted a petition to plaintiff requesting a hearing pursuant to section 6—401 of the Illinois Highway Code (Ill. Rev. Stat. 1973, ch. 121, §6—401) on the poor repair and maintenance of the road. The hearing was held in April, and afterwards plaintiff ordered defendant to close the washed out portion of West Lynnwood Drive, to prepare plans for reconstruction of that portion of the road within 60 days, to repair the road within 90 days of completion of the plans, and to "take steps required to have cul-de-sac constructed as shown on plans for Lynnwood Subdivision." When defendant refused to comply with the order, plaintiff filed this suit seeking a writ of mandamus to compel defendant to make the repairs described in his order.

As he unsuccessfully contended in the trial court, plaintiff argues on appeal that defendant's October 21, 1969, letter amounted to substantial compliance with the statute governing incorporation of subdivision roads into the township road system. Section 6—325 of the Illinois Highway Code (Ill. Rev. Stat. 1973, ch. 121, §6—325) provides:

> "In counties having less than 500,000 inhabitants, roads or streets in platted subdivisions and dedicated to public use shall be included in and incorporated into the township or district road system * * * when and if such roads or streets conform to the rules, specifications and regulations regarding location, width, grades, surface and drainage structures established by the county board. The highway commissioner shall determine when such dedicated roads and streets so conform and shall thereupon make an order to incorporate them into the township or district road system and file one copy of such order in the office of the district clerk and one copy with the county superintendent of highways. * * * "

■■ The sole question confronting the jury was whether defendant accepted the street within the terms of section 6—325. The jury found he did not, and the issue on appeal is whether there was sufficient evidence to sustain that verdict. Clearly there was not an acceptance as a matter of law, since defendant's letter was not in the form of an order purporting to incorporate the subdivision streets into the township road system, and was not filed with the road district clerk as required by the statute.

■■ As was noted in *Pilgrim v. Chamberlain* (3d Dist. 1968), 91 Ill. App. 2d 233, 234 N.E.2d 75, statutory dedications of public roads are in derogation of the common law, and the provisions of the statute must be strictly complied with in order to accomplish the dedication.

Although defendant admitted signing the letter stating that the road was acceptable to him, he testified that he did not know why the letter was required or its legal import. The conditions mentioned in defendant's letter, which were set out in general terms in plaintiff's letter to the board

committee the next day, included restoration of the portion of West Lynnwood Drive torn up in connection with the unfinished Second Addition streets. This apparently involved the northwest 200 feet of West Lynnwood Drive, and according to defendant, also included construction of the cul-de-sac which plaintiff now says defendant must construct.

As plaintiff notes, the conditions set forth in his letter of October 22, 1969, to the County Board were in fact conditions precedent to acceptance of Second Addition streets and were not things to be done before the First Addition streets could be accepted. Nevertheless, we believe defendant's letter could be construed to mean that the work completed thus far was acceptable, and would be formally incorporated into the township road system when the streets were completed. We note that a letter of acceptance from plaintiff was not required by either the statute or the La Salle County rules and regulations, and hence was not necessary to incorporation of streets into the Township road system.

The rules and regulations of the La Salle County Board governing plats and dedications, in effect in 1965, required that a surety performance bond, payable to the township, be filed with the county clerk. The regulations also provided:

> "Upon satisfactory completion of the above-stated improvements, the Township Highway Commissioner shall inform the County Clerk to notify the Bonding Company of same, and the Township Highway Commissioner shall assume the responsibility of maintenance and repair of all public streets."

According to documents in the record, in 1965 the developer filed a performance bond for the first subdivision in the sum of $24,677.50 with the county clerk, and the bond was released March 26, 1968, solely upon plaintiff's approval. The county clerk searched his records and could find no notification from defendant authorizing release of the bond. The release in fact occurred five months before plaintiff's letter of August 21, 1968, stating that the First Addition roads could not be accepted because of incomplete work, and 19 months prior to defendant's letter of October 21, 1969, which plaintiff claims was an acceptance of the roads.

■■ It is plain from the record that plaintiff caused the bond to be released before the First Addition Streets were completed, without defendant's approval, contrary to the La Salle County rules and regulations. This evidence supports a conclusion that plaintiff acted improperly when he authorized the release of the bond in 1968 and again when he approved the subdivision streets in 1969. Although plaintiff may have wanted to have the township assume responsibility for the subdivision streets, his actions do not require a finding that defendant accepted the streets as a part of the township road system.

Plaintiff also argues that the acts of defendant established his

acceptance of West Lynnwood Drive. When considered with the letter, the repairs, snow plowing and salting are said to indicate his intention to incorporate the street into the township road system. Section 2—202 of the Highway Code (Ill. Rev. Stat., ch. 121, §2—202) provides that public highways may be established by dedication or by public use as a highway for 15 years.

Since West Lynnwood Drive had been in existence only four years at the time of the trial, there can be no question of a public road being established by 15 years public use. Public use for a lesser time does not constitute acceptance of a street dedication. Whether defendant repaired and maintained the subdivision streets because he believed they were township roads, or because he sought to protect himself from liability by performing the minimum repairs required to keep the streets safe for travel, is a question of fact for the jury to decide. (See *People ex rel. Porten v. Geske* (2d Dist. 1970), 119 Ill. App. 2d 152, 255 N.E.2d 753.) Since conflicting inferences can be drawn from the evidence, we cannot say that it was error to reject plaintiff's interpretation and to accept defendant's explanation.

Other testimony favorable to plaintiff is similarly urged in support of a reversal. For example, defendant at one point stated that he spent township funds only on township roads. This statement was inconsistent with other testimony of defendant, and it was thus one matter to be weighed by the jury in reaching a verdict.

Plaintiff also contends that defendant's signature on the plat indicated that the constructions plans meet the county requirements. Since an acceptance of the plat is not acceptance of the streets, defendant's signature on the plat has no bearing on this case. See *Hoerrmann v. Wabash Ry. Co.* (1923), 309 Ill. 524, 141 N.E. 289.

■■■ Plaintiff further asserts that defendant's acceptance of the First Addition streets was a ministerial act; once actual acceptance has been established, mandamus will issue to compel formal acceptance, and thus defendant's failure to file a formal order incorporating the streets with the road district clerk would not be a defense to this action. This argument assumes that the streets did in fact comply with the county requirements when, to the contrary, the evidence indicates that West Lynnwood Drive was never completed as planned, according to the plat of either the First Addition or the Second Addition. Acceptance of subdivision streets is a separate act from acceptance of the plat, and under both the statute (Ill. Rev. Stat., ch. 121, par. 6—325) and the La Salle County rules and regulations, the defendant was the only official vested with authority to make a determination that the streets conformed to the county regulations.

We believe the evidence was sufficient to support a finding that the

streets did not conform to the regulations, that defendant did not accept them, and that he was justified in refusing to assume responsibility for repairs and maintenance. Accordingly, we hold that the verdict and judgment were not contrary to the manifest weight of the evidence.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.