Nos. 2--07--0539 & 2--07--0632 cons.     Filed: 12-10-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF MONTGOMERY, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--MR--533 |
| | ) | |
| AURORA TOWNSHIP and | ) | |
| FRED BURGESS, in his Official Capacity as | ) | |
| Aurora Township Highway Commissioner, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | Michael J. Colwell, |
| (The City of Aurora, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

In this consolidated appeal, defendants, Aurora Township (the Township) and Fred Burgess, in his official capacity as Aurora Township highway commissioner (the Commissioner), appeal from the trial court's order denying the Township's motion to dismiss and granting summary judgment in favor of plaintiff, the Village of Montgomery (Montgomery), and defendant, the City of Aurora (Aurora). In granting summary judgment, the trial court found that the Township owned the Ashland Avenue Bridge (the bridge) spanning the Fox River in southern Kane County, and further found that the Commissioner had the obligation to maintain the bridge. On appeal, the Township contends that the trial court erred in denying its motion to dismiss, because it was not a proper party to this action. Additionally, the Commissioner contends that the trial court erred in granting Montgomery and

Aurora's joint motion for summary judgment and in denying his cross-motion for summary judgment. We affirm.

On December 11, 2006, Montgomery commenced the instant proceeding by filing a complaint for declaratory judgment. As amended, the complaint named the Township, the Commissioner, and Aurora as defendants and requested the trial court to determine and adjudicate the rights, obligations, and liabilities of the parties as they related to the bridge. The complaint alleged that the bridge was located in unincorporated Kane County, between the corporate limits of Montgomery and Aurora, and was wholly within the Township's boundaries. The complaint alleged that the Township constructed the bridge in 1967 and 1968 and continued to maintain the bridge between 1968 and 2005. The complaint alleged that, in 2005, the Commissioner sent a letter to the Illinois Department of Transportation (IDOT), indicating that the bridge was not within the Township's jurisdiction. The complaint alleged that, since that time, the Township had refused to maintain and clear snow from the bridge, creating an unsafe condition for motorists. Montgomery requested the trial court to declare that it did not own the bridge and that it had no obligation to maintain the bridge.

On January 11, 2007, the Township moved to dismiss the complaint pursuant to section 2--619(a)(9) of the Code of Civil Procedure (the Procedure Code) (735 ILCS 5/2--619(a)(9) (West 2006)). The Township asserted that Montgomery's complaint against it was barred because townships have no statutory authority over roads and bridges. See Burnidge Brothers Almora Heights, Inc. v. Wiese, 142 Ill. App. 3d 486, 492 (1986).

On March 2, 2007, Montgomery and Aurora jointly moved for summary judgment. In their motion, they argued that, prior to the construction of the bridge, Aurora had disconnected from its

southern corporate boundaries the land on which the bridge was to be built. Additionally, prior to construction, Montgomery annexed land immediately south of the planned bridge. Montgomery and Aurora argued that at no time after the construction of the bridge had they annexed the land upon which the bridge was constructed. They argued that the Township had constructed the bridge in 1967 and 1968 and had maintained the bridge since that time until 2005. Montgomery and Aurora argued that, in 1997, the Township had also repaired and completely refurbished the bridge. Montgomery and Aurora also argued that, in 2005, the Township stopped maintaining the bridge and has since insisted that either Montgomery or Aurora owns the bridge and is responsible for its maintenance and operation. They requested the trial court to enter summary judgment in their favor and declare that the Township owned the bridge and was responsible for its repair and maintenance.

In support of their joint motion for summary judgment, Montgomery and Aurora attached: (1) a photocopy of Montgomery Ordinance No. 138 (eff. March 3, 1958), annexing to the municipality parcels of land immediately to the south of the present location of the bridge; (2) a photocopy of Aurora Ordinance No. 3317 (eff. May 15, 1961), disconnecting from the southern boundary of the municipality certain parcels of land on which the bridge is presently located; (3) the affidavit of Aurora city clerk Cheryl M. Vonhoff, indicating that her "search of the City records revealed no ordinance or records wherein the City of Aurora reannexed territory that was disconnected from the City by Ordinance No. 3317"; (4) the affidavit of Aurora's former director of public property, Rosario DeLeon, indicating that the bridge was not within Aurora's corporate limits; (5) photocopies of intergovernmental agreements between Aurora and the Township dated November 20, 2001, and October 28, 2004, indicating that Aurora would plow and salt the bridge even though it fell within the Township's jurisdiction; (6) the affidavit of Montgomery public works

director Michael Pubentz, averring that the bridge was not within the Montgomery corporate limits and that, prior to 2006, the Township had maintained the bridge with the assistance of Aurora.

Montgomery and Aurora also attached the affidavit of Edward Wilmes, who was Aurora Township highway commissioner between 1993 and 2001. In his affidavit, Wilmes averred that the bridge was constructed by the Aurora Township road district in 1967 and 1968. Wilmes averred that, during his time as highway commissioner, his responsibilities included maintaining the bridge and removing snow and ice from the bridge. Wilmes averred that, during each year of his term, he entered into an agreement with Aurora, whereby Aurora agreed to clear snow from the bridge on the Township's behalf. Wilmes averred that Aurora had "disconnected the territory upon which the [b]ridge was ultimately built so that the [b]ridge could be built by the Township (as, after disconnection, the territory was unincorporated)." Wilmes averred that, after construction of the bridge and until the end of his term as highway commissioner, the Aurora Township road district continued to own and maintain the bridge, and there was no attempt by any municipality to annex the bridge. Wilmes averred that neither Aurora nor Montgomery owned the bridge or had any obligation to maintain it. Wilmes averred that the Aurora Township road district rebuilt the bridge in 1997 at a cost of approximately $1.2 million. Following the reconstruction of the bridge in 1997, plaques were affixed to the bridge indicating the Township's ownership of the bridge. The parties later deposed Wilmes, at which time he affirmed the statements contained in his affidavit.

Also attached to the motion for summary judgment was a jurisdictional boundary line agreement executed by Aurora and Montgomery on March 9, 1990. Paragraph 9 of the agreement provided as follows:

"In the event Aurora enters into an agreement with Aurora Township with respect to major repairs, reconstruction or replacement of the Ashland Avenue Bridge, Montgomery shall reimburse Aurora for 25% of the total costs for such major repairs, reconstruction or replacement. In the event Montgomery is requested to financially participate in such major repairs, reconstruction or replacement, Montgomery shall be notified of such proposed work and has the right to participate in the decision as to the necessity, nature and extent of such work. In any event, all ordinary repairs and maintenance to said bridge shall not be the responsibility of Montgomery."

On March 6, 2007, the Commissioner filed an answer to Montgomery's complaint, denying all material allegations. The Commissioner also filed four affirmative defenses to Montgomery's suit. The Commissioner's first affirmative defense alleged that Aurora Ordinance No. 3317, disconnecting the land on which the bridge was built, was void because "the Illinois Municipal Code precludes disconnection from a municipality by a municipal entity." The Commissioner alleged that the land disconnected by the ordinance was owned by a municipal entity known as the "Fox River Valley Pleasure Driveway and Park District." The Commissioner also alleged that Montgomery Ordinance No. 130 (eff. October 7, 1957), which also purported to disconnect land owned by the Fox River Valley Pleasure Driveway and Park District and on which the bridge was built, was similarly void.

The Commissioner's second affirmative defense alleged that the Township's repair of the bridge in 1997 was contingent upon Aurora and Montgomery taking jurisdiction over the bridge after the completion of the repairs. In support of this allegation, the Commissioner attached a February

14, 1996, letter that former highway commissioner Wilmes wrote to Montgomery's administrator, which provided, in relevant part:

"Thank you for taking time to discuss the Ashland Avenue bridge rehabilitation project this morning.

* * *

Funding of the project solely by [the Township] is contingent upon [the Township] being relieved from ownership, maintenance, legal and financial obligations, past, present, and future, relative to [the bridge], intersections, park accesses and any appurtenances there unto as have existed, exist, or may exist in the future.

Further, it must be resolved by the three entities that ownership shall be conveyed to [Aurora], and the Aurora/Montgomery boundary agreement shall govern all future maintenance.

Should any further clarification or additional discussion be required, please notify me at once. Again, I thank you for making this project and transfer possible."

The Commissioner alleged that Aurora and Montgomery never objected to the terms of this correspondence and that they have waived any right to disclaim ownership of or responsibility for the bridge.

The Commissioner's third affirmative defense alleged that IDOT "has examined ownership of the [bridge] and has made a determination that the [bridge] lies within the corporate limits of Montgomery." In support of this allegation, the Commissioner attached a July 30, 2004, letter written by IDOT engineer Chuck Ingersoll, which provided, in relevant part:

"This is in response to your request for verification as to whether Aurora Township is responsible for the Ashland Avenue Bridge *** over the Fox River in Aurora, Illinois (Kane County).

You had brought to our attention that [the bridge] had been annexed by a municipality, yet our structure information database still indicated that [the bridge was] Aurora Township's responsibility. Pursuant to statute 605 ILCS 5/6--203 of the Illinois Road and Bridge Laws, a township cannot have jurisdiction over streets in municipalities. Whenever a municipality annexes a highway and/or structure that was under township responsibility, this highway or structure automatically becomes the responsibility of the annexing municipality.

Our records indicate that [the bridge is] within the city limits of a municipality. Therefore, Aurora Township has no responsibility regarding [the bridge]."

The Commissioner also provided a 2005 IDOT internal memorandum that stated that "Montgomery owns a small section of Ashland which includes [the bridge]" and that "everything points to Montgomery owning [the bridge]."

Relying on Aurora's and Montgomery's pleadings, the Commissioner's fourth affirmative defense alleged that Aurora had jurisdiction over the roadway on one side of the bridge and that Montgomery had jurisdiction over the roadway on the other side. The Commissioner alleged that the Township had no jurisdiction over any road leading to or from the bridge and that, under Illinois law, "the duty to maintain a bridge rests with the government responsible for maintaining a public roadway for which the bridge is a part."

On March 9, 2007, the Commissioner filed a cross-motion for summary judgment. The Commissioner argued that Aurora's 1961 ordinance and Montgomery's 1957 ordinance purporting to disconnect the land on which the bridge was built were void because "a municipal entity cannot disconnect from a municipality under the Illinois Municipal Code." The Commissioner argued that the entity seeking disconnection under these ordinances was the Fox River Valley Pleasure Driveway and Park District, which, as a municipal entity, could not avail itself of the disconnection procedure. The Commissioner further argued that, because Aurora and Montgomery had admitted that they have jurisdiction over the land on the opposite sides of the bridge, they must also have jurisdiction over the bridge itself as a matter of law. The Commissioner argued that Aurora and Montgomery could not divest themselves of responsibility for maintaining a bridge that was an integral part of the public roadway system within their municipal jurisdictions. The Commissioner also argued that no township road connected with the bridge and that the nearest township road under the jurisdiction of the Commissioner was more than one mile away.

On May 1, 2007, following a hearing, the trial court entered an order (1) denying the Township's motion to dismiss; (2) denying the Commissioner's cross-motion for summary judgment; and (3) granting Aurora and Montgomery's joint motion for summary judgment. The trial court's order further provided that "the Court declares that the ownership and control of the Ashland Avenue Bridge rests with the Aurora Township, and the obligation to maintain the bridge rests with the Aurora Township Highway Commissioner." Following the denial of the Commissioner's motion to reconsider, both the Township and the Commissioner filed timely notices of appeal. This court has consolidated the appeals for purposes of decision.

Initially, we address appeal No. 2--07--0632, in which the Township contends that the trial court erred in denying its motion to dismiss pursuant to section 2--619(a)(9) of the Procedure Code. The Township argues that it is not a proper party to this action because it has no statutory power or authority over roads and bridges. See Western Sand & Gravel Co. v. Town of Cornwall, 2 Ill. 2d 560, 566 (1954); Wiese, 142 Ill. App. 3d at 492. The Township asserts that, under section 6--201.8 of the Illinois Highway Code (the Highway Code) (605 ILCS 5/6--201.8 (West 2006)), only the township highway commissioner has charge of roads and has the duty to repair and maintain them. An action may be dismissed pursuant to section 2--619(a)(9) of the Procedure Code when it is barred by an affirmative matter that defeats the claim or avoids its legal effect. 735 ILCS 5/2--619(a)(9) (West 2006); Turner v. Fletcher, 302 Ill. App. 3d 1051, 1055 (1999). We review de novo the trial court's ruling on a section 2--619 motion. Porter v. Decatur Memorial Hospital, 227 Ill. 2d 343, 352 (2008).

We conclude that the Township is a proper party to this action and that the trial court did not err in denying its motion to dismiss. Although a township highway commissioner has sole statutory authority to repair and improve "the roads of his district" (605 ILCS 5/6--201.8 (West 2006)), the township is nonetheless the owner of the roads within the township's road system (Hennings v. Centreville Township, 56 Ill. 2d 151, 154-55 (1974)) and must approve the budget presented by the highway commissioner to operate the township's roads and bridges and must audit the highway commissioner's accounts (60 ILCS 1/80--15, 80--60 (West 2006)). As such, the Township was properly named as a defendant to the instant action, which sought a declaration of the "rights, obligations, and liabilities of the parties as they pertain to the [b]ridge." Moreover, we note a number of similar cases in which townships were named as defendants. See City of Mattoon v.

Paradise Township, 131 Ill. App. 3d 327 (1985); Andrews v. City of Springfield, 56 Ill. App. 2d 201 (1965). Here, the trial court's final order did not impose upon the Township any obligation that was contrary to its statutory authority. As noted above, although the trial court declared that the Township owned the bridge, it nonetheless ruled that the Commissioner was responsible for maintaining the bridge. We therefore affirm the trial court's order denying the Township's section 2--619 motion to dismiss.

In appeal No. 2--07--0539, the Commissioner contends that the trial court erred in granting Aurora and Montgomery's joint motion for summary judgment and in denying his cross-motion for summary judgment. The Commissioner argues that the trial court improperly focused on what entity "owned" the bridge, when the appropriate inquiry should have been what entity had "jurisdiction" over the bridge. The Commissioner argues that he did not have jurisdiction over the bridge because it was part of the municipal street system of Aurora and Montgomery, whose municipal boundaries extended to either side of the bridge. The Commissioner relies upon IDOT's July 30, 2004, letter indicating that the bridge was within the boundaries of a municipality and was not the responsibility of the Township. The Commissioner additionally asserts that Aurora's and Montgomery's 1957 and 1961 ordinances disconnecting the land under the bridge from those municipalities were void and of no effect. The Township joins in many of the Commissioner's arguments.

Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2006). The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43 (2004). In

determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. Adams, 211 Ill. 2d at 43. Summary judgment is inappropriate where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts. Adams, 211 Ill. 2d at 43. Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. Adams, 211 Ill. 2d at 43. This court reviews de novo a trial court's ruling on a motion for summary judgment. Adams, 211 Ill. 2d at 43.

At the outset, we agree that the relevant question in the instant case is not what entity owns the bridge, but what entity has responsibility for maintaining the bridge. Streets and roadways are held by public entities in trust for the benefit of the public (Hawthorne Bank of Wheaton v. Village of Glen Ellyn, 154 Ill. App. 3d 661, 667 (1987)), and governmental entities have a corresponding duty to maintain the streets and roadways within their jurisdiction (Fountain Head Drainage District v. City of Champaign, 160 Ill. App. 3d 341, 346 (1987)). By statute and at common law, "the duty to maintain a bridge rests upon the government responsible for maintaining the public roadway of which the bridge is a part, be it a county or a road district *** and regardless of whether the bridge was built by that local government or by another governmental entity." County of Bureau v. Thompson, 139 Ill. 2d 323, 340 (1990). Therefore, the relevant inquiry on appeal is what governmental entity is responsible for maintaining the public roadway of which the bridge is a part. Thompson, 139 Ill. 2d at 340-41.

Section 2--103 of the Highway Code defines the township and district road system to include "all rural roads to which this Code applies *** and which are not a part of the State highway system,

county highway system or municipal street system." 605 ILCS 5/2--103 (West 2006). The Highway Code defines a rural road as "[a]ny highway or road outside the corporate limits of any municipality." 605 ILCS 5/2--218 (West 2006). Meanwhile, section 2--104 of the Highway Code defines the municipal street system as including "existing streets and streets hereafter established in municipalities which are not a part of the State highway system or county highway system, together with roads outside their corporate limits over which they have jurisdiction pursuant to this Code or any other statute." 605 ILCS 5/2--104 (West 2006). The parties do not dispute that the roadway comprising the bridge is a part of neither the state highway system nor the county highway system. Hence, under the definitions provided by the Highway Code, if the bridge is not a part of a municipal street system, then it is a part of the township and district road system and is the responsibility of the Commissioner to maintain. 605 ILCS 5/2--103 (West 2006); Andrews, 56 Ill. App. 2d at 209-10.

Based upon our review of the record, the uncontroverted evidence establishes that the bridge is not a part of a municipal street system, and we conclude that the trial court properly granted summary judgment on behalf of Montgomery and Aurora. As detailed above, the record contains copies of municipal ordinances, enacted prior to the bridge's construction, by which Montgomery and Aurora disconnected the property under the bridge from their corporate boundaries. The record also contains affidavits from Aurora's former director of public property and Montgomery's public works director averring that the bridge is not within the corporate limits of either municipality. Based upon such evidence, the roadway of which the bridge is a part is not within Montgomery's or Aurora's governmental jurisdiction, and those municipalities have no corresponding statutory or common-law duty to maintain the bridge. See 605 ILCS 5/2--104 (West 2006); Thompson, 139 Ill. 2d at 340-41.

Additionally, the materials accompanying the cross-motions for summary judgment plainly indicate that neither Montgomery nor Aurora has ever taken responsibility for maintaining the bridge. The Township's former highway commissioner, Edward Wilmes, averred that the Township constructed the bridge in 1967 and 1968 and maintained the bridge for nearly 40 years. Wilmes averred that Aurora and Montgomery originally disconnected the land under the bridge so that the Township could construct the bridge. The Township also rebuilt the bridge in 1997 at a cost of approximately $1.2 million. The record contains evidence demonstrating that plaques have been affixed to the bridge showing the Township's participation in the bridge's reconstruction. Although the record contains intergovernmental agreements reflecting that, during certain years, Aurora agreed to plow and salt the bridge on behalf of the Township, neither Aurora nor Montgomery ever executed a formal agreement to take over maintenance responsibility for the bridge. Lacking such an agreement or evidence that the bridge was otherwise within the boundaries of a municipality, the trial court properly determined that the Commissioner was responsible for maintaining the bridge. See 605 ILCS 5/2--103 (West 2006).

In reaching this conclusion, we reject the Commissioner's argument that Montgomery's and Aurora's ordinances disconnecting the property on which the bridge was built were void and of no effect. The Township asserts that the municipalities had no authority under Illinois law to disconnect property owned by a municipal entity, here the Fox River Valley Pleasure Driveway and Park District. In support of his position, the Commissioner relies upon a line of cases holding that a municipality lacks authority to disconnect its own property, under section 7--3--4 of the Illinois Municipal Code (65 ILCS 5/7--3--4 (West 2006)). See Citizens for Conservation v. Village of Lake Barrington, 241 Ill. App. 3d 471, 475-76 (1993); People ex rel. Town of Aurora v. City of Aurora,

222 Ill. App. 3d 950, 954-55 (1991). However, the Commissioner may not use the instant proceeding as a means to collaterally attack the validity of municipal ordinances disconnecting the land under the bridge. Questions of whether parcels have been legally disconnected or annexed can be tried only by quo warranto proceedings and cannot be raised collaterally. See People ex rel. Quisenberry v. Ellis, 253 Ill. 369, 374-75 (1912); East Side Fire Protection District v. City of Belleville, 221 Ill. App. 3d 654, 655-56 (1991); North Maine Fire Protection District v. Village of Niles, 53 Ill. App. 3d 389, 394-95 (1977). The Commissioner never sought review of the municipal ordinances by filing a quo warranto action, and he is precluded from raising the issue collaterally almost 50 years later. Instead, we presume the validity of the ordinances and conclude that they disconnected the property on which the bridge was built from the municipal boundaries. See Quisenberry, 253 Ill. at 374-75.

The Commissioner alternatively argues that, even assuming the validity of the ordinances, the legal description contained within Montgomery Ordinance No. 130 "failed to disconnect property adjacent to the bridge." The Commissioner asserts that Montgomery, therefore, has jurisdiction over property adjacent to the bridge. However, the Commissioner fails to cite any authority supporting his conclusion that Montgomery's jurisdiction over property adjacent to the bridge has relevance to the determination of jurisdiction over the bridge itself. As noted above, the relevant inquiry under section 2--104 of the Highway Code is whether the bridge is within municipal boundaries. Hence, the relevant question is whether the land on which the bridge sits is within municipal boundaries, not whether the land adjacent to the bridge is within those boundaries. 605 ILCS 5/2--104 (West 2006). Therefore, that Montgomery retained jurisdiction over property adjacent to the bridge does not alter our determination that the bridge falls within the Township's jurisdiction.

The Commissioner further argues that, even if the bridge is outside the corporate boundaries of Aurora and Montgomery, the bridge is nonetheless a part of a municipal street system. In making this argument, the Commissioner notes that section 2--104 of the Highway Code provides that the municipal street system includes existing streets in the municipality "together with roads outside [its] corporate limits over which [it has] jurisdiction pursuant to this Code or any other statute." (Emphasis added.) 605 ILCS 5/2--104 (West 2006). The plain language of this section provides that roads outside a municipality's corporate limits are a part of its street system only where the municipality has jurisdiction over the roads under another provision of the Highway Code or other statute. Southern Illinoisan v. Illinois Department of Public Health, 218 Ill. 2d 390, 415 (2006) (noting that statutes must be applied according to their plain language). Tellingly, the Commissioner cites no other provision of the Highway Code or other statute that would place the bridge under the jurisdiction of either Aurora or Montgomery. Lacking any statutory grant of jurisdiction, the bridge falls outside Aurora's and Montgomery's corporate limits and is not a part of a municipal street system under section 2--104 of the Highway Code.

The lack of a statutory grant of jurisdiction extending Montgomery's or Aurora's jurisdiction beyond its corporate boundaries distinguishes this case from the authorities relied upon by the Commissioner. See City of Mattoon v. Paradise Township, 131 Ill. App. 3d 327 (1985); Andrews v. City of Springfield, 56 Ill. App. 2d 201 (1965). In both of these cases, municipalities were found to have maintenance responsibilities as to roadways outside their corporate boundaries. The roadways at issue provided access to lots adjoining a man-made lake constructed by the municipalities outside their corporate limits as part of a municipal system of water works and water supply. Mattoon, 131 Ill. App. 3d at 329; Andrews, 56 Ill. App. 2d at 205-08. The lake and water

systems were constructed by the municipalities under an express grant of legislative authority. Mattoon, 131 Ill. App. 3d at 329; Andrews, 56 Ill. App. 2d at 208. Under these circumstances, the reviewing courts held that the roads accessing these properties were part of the municipal street systems under section 2--104 of the Highway Code because the municipalities had jurisdiction over the roads by "other statute." Mattoon, 131 Ill. App. 3d at 332-33; Andrews, 56 Ill. App. 2d at 210.

Unlike in Mattoon and Andrews, neither Aurora nor Montgomery has statutory jurisdiction over the bridge. To the contrary, the evidence reflects that these municipalities have no legal relationship to the bridge that would extend their jurisdiction to include the bridge as part of their municipal street systems. The evidence demonstrates that the bridge was built by the Township on land outside Aurora's and Montgomery's corporate limits. Aurora and Montgomery have never annexed the land under the bridge, and it is evident that the Township has maintained and repaired the bridge since its initial construction.

Additionally, we reject the Commissioner's argument that genuine issues of material fact precluded the entry of summary judgment. The Commissioner asserts that evidence appearing in the record suggested the possibility that Aurora and Montgomery had entered into intergovernmental agreements to assume responsibility to maintain and repair the bridge. Specifically, the Commissioner relies upon the 1990 intergovernmental boundary line agreement between Aurora and Montgomery, which contained a provision relating to the municipalities' potential responsibilities in the event of the repair, reconstruction, or replacement of the bridge. The Commissioner further relies upon Wilmes's 1996 letter to Montgomery's administrator, stating that funding of the 1997 bridge reconstruction was contingent upon the transfer of bridge ownership to Aurora and Aurora's and Montgomery's assumption of repair and maintenance responsibilities.

Contrary to the Commissioner's assertions, however, these documents do not establish that Montgomery or Aurora did, in fact, agree to assume responsibility for the bridge. As noted above, the provision of the 1990 intergovernmental boundary line agreement between Aurora and Montgomery relating to maintenance of the bridge became effective only "[i]n the event Aurora enters into an agreement with Aurora Township with respect to major repairs, reconstruction or replacement of the Ashland Avenue Bridge." The record contains no evidence reflecting that Aurora ever entered into an agreement with the Township regarding the bridge. Although Wilmes's 1996 letter reflected that the Township and the municipalities had entered into discussions regarding the transfer or maintenance of the bridge, no agreement on the matter was ever executed. Indeed, during his deposition, Wilmes specifically testified that his 1996 letter merely reflected a proposal discussed by the Township and the municipalities and that no formal agreement regarding the transfer or maintenance of the bridge was ever reached. Wilmes testified that, despite the failure to reach an agreement with the municipalities, the Township decided to repair the bridge due to the present availability of federal, state, and township funds to pay for the project. Based on such uncontroverted evidence from the Township's former highway supervisor, we find no issue of fact as to Montgomery's or Aurora's execution of an agreement to assume responsibility for the bridge.

We also reject the Commissioner's assertions that the July 30, 2004, letter written by IDOT engineer Chuck Ingersoll and IDOT's subsequent internal memorandum precluded the trial court's entry of summary judgment. As noted above, Ingersoll stated in his letter that IDOT's structure information database indicated that the bridge was the Township's responsibility. However, Ingersoll stated that, because the Township "had brought to our attention that [the bridge] had been annexed by a municipality," he determined that the Township did not have responsibility for the bridge. Such

correspondence fails to raise a genuine issue of material fact as to jurisdiction over the bridge, because it provides no factual basis from which we might conclude that the bridge was a part of a municipal street system. See Kosten v. St. Anne's Hospital, 132 Ill. App. 3d 1073, 1079 (1985) (noting that conclusory statements lacking factual basis are insufficient to create an issue of fact so as to defeat a motion for summary judgment). Ingersoll stated that his determination was predicated upon information provided by the Township indicating that the land under the bridge had been annexed by a municipality. However, the record contains no evidence of such an annexation, and the Township has failed to produce the information that it provided to IDOT and upon which IDOT based its conclusion.

Similarly, the 2005 IDOT internal memorandum indicating that Montgomery owned the bridge lacks any verifiable basis. Although the memorandum states that Montgomery "owned a small section of Ashland which includes [the bridge]," it provides no explanation of the basis for this determination. Accordingly, IDOT's determination regarding jurisdiction is unsupported and conclusory and provides no basis to suggest that the bridge is within the corporate limits of either Montgomery or Aurora. In view of the uncontroverted evidence presented by Aurora and Montgomery that the bridge is not within their corporate boundaries, the IDOT exhibits offered by the Commissioner failed to raise a genuine issue of material fact as to jurisdiction over the bridge. See Kosten, 132 Ill. App. 3d at 1079.

In closing, both the Township and the Commissioner assert that the bridge cannot be under their jurisdiction because Aurora and Montgomery have annexed the property on either side of the bridge, leaving the bridge surrounded by the two municipalities and isolated from any Township road by many miles. While we agree that the bridge may be heavily used by the residents of Aurora and

Montgomery for travel between the two municipalities, such a circumstance, as well as the bridge's isolation from Township roads, does not render the bridge a part of a municipal street system under the plain language of section 2--104 of the Highway Code. As already discussed, the municipal street system consists of the existing streets within the corporate limits and other streets over which a municipality has jurisdiction by statute. 605 ILCS 5/2--104 (West 2006). Here, the record definitively establishes that the bridge is not contained within the corporate limits of Montgomery or Aurora and that neither municipality otherwise has statutory jurisdiction. Accordingly, the trial court properly concluded that the bridge was not a part of a municipal street system and that the obligation to maintain the bridge rested with the Commissioner. Accordingly, we affirm the trial court's order granting Aurora and Montgomery's motion for summary judgment and denying the Commissioner's cross-motion for summary judgment.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

BURKE and SCHOSTOK, JJ., concur.